PORTLAND SEBAGO ICE COMPANY *vs.* CHARLES G. PHINNEY.

Cumberland.    Opinion March 11, 1918.

*Rights of riparian owners.   Rule in Maine as to prescriptive ownership in water
rights.   Rule of law as to gaining prescriptive rights by flowage.   Right of
riparian owner to construct a dam.   Rule under common law and
how same has been modified by statute.   Meaning of
reasonable use in constructing and maintain-
ing a dam.*

This is an action on the case for damages for an alleged interference by the defendant with the riparian rights of the plaintiff.

The interference complained of is the erection by the defendant, upon his own land, of a dam about 3000 feet above the lower dam, and some 1200 feet below the reservoir dam of plaintiff.

The plaintiff's contention is that the erection of the defendant's dam is a violation of its water rights upon these ponds and stream, first, as specified and defined in the respective deeds from which it derives its title, and, second, if not by the deeds as aforesaid, by prescriptive occupation.

*Held:*

(1)   The grant in the deeds is limited to flowage to the height of the dam.

(2)   The riparian rights, if conveyed in the deed, are limited by the flowage.

(3)   As the flowage does not reach the site of the dam, the riparian rights did not reach it, and were not interfered with.

(4)   No riparian rights were granted, such supposed rights being limited to flowage only.

(5)   A prescriptive title to flowage cannot be acquired without proof of actual damage.

(6)   No such proof being found, no prescriptive rights were acquired.

(7)  The erection of the defendant's dam was a reasonable use of the stream.

(8)  Being a reasonable use the defendant had a right to erect a dam upon his own land when he might see fit, provided he did the work in a prudent and reasonable manner.

(9)  He would be liable to the plaintiff for interference with its ice privilege, only for injury caused by his negligence.

(10)  It is admitted there was no negligence.

(11)  The defendant cannot, therefore, be held responsible for the incidental damage done the plaintiff.

Action on the case to recover damages for alleged injuries to water rights of plaintiff. Case was reported to Law Court upon certain agreed statement of facts, the Law Court to dispose of the case in accordance with stipulation of the parties. Judgment for defendant.

Case stated in opinion.

*Frederic J. Laughlin, and David E. Moulton,* for plaintiff.

*Reynolds & Sanborn,* for defendant.

SITTING: CORNISH, C. J., SPEAR, KING, HANSON, PHILBROOK, JJ.

SPEAR, J.  This is an action on the case for damages for an alleged interference by the defendant with the riparian rights of the plaintiff. The facts may be briefly stated as follows: At the date of the plaintiff's writ it was the owner in the town of South Portland of an ancient mill privilege, dam, and the land upon which it was erected, used for the purpose of creating a pond for cutting ice and operating a mill. This will be hereafter referred to as the lower pond. The plaintiff was also the owner of another piece of land about half a mile from the above named dam, up a small stream which flowed down into the mill pond and tended to supply it with water for ice and mill purposes. Up this stream about 4800 feet as the stream flows, the plaintiff had also erected another dam across the stream, on his own land, for the purpose of storing water for use, when necessary, for supplying water for its ice field and for power. This is called the Pollywonkee dam, and will be hereafter referred to as the reservoir dam.

The interference complained of is the erection by the defendant, upon his own land, of a dam about 3000 feet above the lower dam, and some 1200 feet below the reservoir dam, These distances are approximately estimated by measurements made upon a plan of the locus, made upon scale.

The plaintiff's contention is that the erection of the defendant's dam is a violation of its water rights upon these ponds and stream, first, as specified and defined in the respective deeds from which it derives its title, and, second, if not by the deeds by prescriptive occupation. In 1854, prior to any of the rights acquired by plaintiff, Silas Skillins was the owner of all the land and all the water rights, now in controversy. The rights of each party were carved out of this ownership by the language of their deeds, and a proper construction thereof. Neither party had any rights prior to this date, and now have only what was granted, barring prescription. The plaintiff's title and privileges are derived from the following deeds: September 7, 1854 Skillins conveyed the town privilege to Joseph R. Mathews, conveying the right of flowage, only, by the use of this language: "and the right of flowage as I have improved the same." The grantor also reserved the privilege of cutting the ice on the pond jointly with the grantee. But this reservation is of no consequence in the decision of this case.

On June 26, 1863, Mathews conveyed to Dennis W. Clark in the identical language of the above conveyance. These premises have passed by mesne conveyances from Clark to the plaintiff. This completes the plaintiff's rights in the lower dam, by this first deed. At this time it is agreed that Clark owned all rights of flowage and all riparian rights on both sides of the brook up to the point where the defendant's easterly or northeasterly boundary now is, that is, the plaintiff's lower dam and privileges of flowage and riparian rights run up the brook to the defendant's land. At this time, however, Skillins owned all the land on both sides of the stream above the lower privilege up to and "a considerable distance" beyond the Pollywonkee dam.

In 1866 Clark raised the lower dam and thereby flowed the land of Skillins up the stream above the lower dam, from which a controversy arose, resulting in an adjustment, which involved the following deed, under which the plaintiff claims to have been granted the right not only to flow but control the water of the streams tributary to the lower pond. Bear in mind, Skillins at this time owned all the land on both sides of the stream, between the land of the lower pond up to and beyond the reservoir dam. This deed is important and we insert the description entire: "All my right, title and interest in and to the following described premises and rights. The right of flowing

and covering with water, so much of my land situated along both sides of Long Creek, so called, and all the gullies and streams and water emptying into said creek, and upon both sides of said creek, streams and gullies, as is required to make a pond for the use of said Clark's mill, and of cleaning and taking out the ice from said pond. Also conveying all my rights and privileges as reserved by me in conveyance to Joseph R. Matthews, September 7th, 1854, by deed recorded in the Cumberland Registry of Deeds, Book 257, Page 263. Together with all claims for damages caused by the overflowing of my land to make said pond of water, and all the riparian rights in law or equity, for the purpose specified, provided said water shall not be raised any higher than it is by said dam as now built."

The increased height of the dam remains the same. In 1870, Skillins conveyed to Clark the land at and for some 50 rods above the site of the Pollywonkee dam, which, with Skillins' consent, had been erected some five years before. This deed was a straight conveyance of land by metes and bounds, granting no privileges whatever. It should, therefore, be observed that the plaintiff gained no water or riparian rights by this grant except what went with the land, and these were all above the dam and immaterial to the decision of this case, so far as any grant of the deed is concerned. All these properties have merged, sooner or later, in the title of the plaintiff. The title of the defendant appears from the agreed statement as follows: "The land between the Pollywonkee and lower pond and mill privilege has passed from Silas Skillins by mesne conveyances to the defendant, and on this land so acquired, the defendant, in the fall of 1914, constructed a dam not far from his easterly line. This dam is constructed across the stream running from the upper to the lower pond, but is above the point affected by flowage caused by the plaintiff's lower dam." All the other facts embraced in the agreed statement are immaterial.

From these deeds, title, and privileges as agreed upon, what are the respective rights of these parties? The rights of these parties so far as the deeds are concerned, are located between the lower pond, and the defendant's dam. The Pollywonkee dam received no privileges whatever on the stream, below the land on which the dam set. Accordingly, in construing the deeds we may eliminate this conveyance from consideration. Nor need we consider the first deed, conveying only the right of flowage, as this original right was fully

superceded by the adjustment deed of March 17, 1866, which has been fully quoted. This deed contains but two grants pertinent to the decision of this case. (1) The right of flowing and covering with water, (the latter phrase meaning permanently) all the lands of the grantor bordering on any of the water courses which contribute to supply the lower pond with water for producing an ice field. (2) A grant of "all the riparian rights in law or in equity." If the provisions of this deed stopped here, it would be a grant of very broad rights. But it does not stop there. Grant (2) contains two most important limitations, both upon grants (1) and (2). It grants "all riparian rights" (a) "for the purpose specified;" (b) provided said water "shall not be raised any higher than it is by the dam, as now built."

Upon the construction of this deed depends the rights of the parties. Let us therefore apply its provisions to the face of the earth, representing the stream, and location of these dams, in connection with the circumstances, and agreed facts, and note the deductions that reasonably follow.

It is no longer debatable that the intention of the parties control the construction of a deed, if it can be discovered. Nor is it longer questioned that every word in the instrument may be scanned in finding that intention.

The deed before us, in clause (1) grants an unlimited right to flow and cover the land with water. But we find important and material limitations upon this right. Taken out of order, the words of limitation (b) in express terms confined the right of flowage to the height of the dam as it stood March 17, 1866. It requires no interpretation to show that the right of flowage broadly conveyed by grant (1) was limited by proviso (b) to the height of the dam, as it was in 1866.

Coming now to the grant in clause (2) "and all the riparian rights in law and equity" we find this twice limited in the deed, itself. First, by the words found in limitation (a) "for the purpose specified." What is the purpose specified? Beyond cavil, the right of flowing or covering the land with water,—nothing else. Second, by the words found in limitation (b) confining the flowage to the height of the dam,—nothing else. It would seem, therefore, that these limiting clauses were undoubtedly intended to reduce these broad grants expressed in the language of "flowage" and "riparian rights" to the sole purpose of flowage.

Moreover, riparian ownership carries with it valuable advantages. The words "riparian owner" have a fixed meaning in law, and when used, convey the information that such owner has title or proprietorship to land bordering on some stream or lake, with certain incidental rights annexed by law, depending upon the character of the stream or lake. But it cannot be contended in this case that the grantor in this deed ever intended to convey any land to the grantee, nor do we understand any such claim ever has been made. We refer to this definition, however, to show in what sense the words, "riparian rights" were used, as limited by the phrase, "for the purpose specified."

It is accordingly evident that the grantor by the words "riparian rights" acquired nothing beyond the right to flow the grantee's land, to the height of the dam. We do not understand the plaintiff complains of any interference with its right of flowage. It is to the right of the defendant to erect a dam, at all. There is another ground upon which the riparian right of the plaintiff, assuming it to contain the elements of such a right, is eliminated from the case. It is conceded in the agreed statement, that the defendant's dam is "above the point affected by the flowage, caused by the plaintiff's lower dam." But the deed limits the riparian right "for the purposes specified," flowage, not to be "raised any higher than it is by the dam as now built." Accordingly, under this statement, in no way does the plaintiff have any rights, riparian or otherwise, beyond the flowage, and the flowage does not reach the defendant's dam. It has already been seen that the plaintiff acquired no rights, by his deed, below the reservoir dam.

Therefore, the plaintiff's deeds, taken in connection with the admission as to the extent of flowage, when the deeds are applied to the face of the earth, do not reach, at all, the location of the defendant's dam. By a fair construction, they are eliminated, so far as his right to construct and operate his dam is concerned. He had the right that every riparian owner has to erect a dam upon his own land.

The plaintiff contends, even though the deeds do not give the plaintiff the exclusive right to the stream from its reservoir to its lower dam, it has gained such right by prescription. We are unable to find anything in the agreed statement that warrants the affirmative of this contention. First, the case does not show that the use made of the stream between the two dams, owned by the plaintiff, ever caused any injury to any of the riparian proprietors along the stream. What-

ever the rule in Massachusetts, it is well settled law in this State, that a use or occupancy of water rights, for twenty years, which does no appreciable injury to the possession, or rights of the owner, does not ripen into a prescriptive title. Prescription not presumed unless damage is sustained. *Tinkham* v. *Arnold,* 3 Maine, 12; *Hathorn* v. *Stinson,* 17 Maine, 123. No prescriptive right gained when flowage causes no damage. *Nelson* v. *Butterfield,* 21 Maine, 220; *Underwood* v. *North Wayne Scythe Co.,* 4 Maine, 291. To establish, there must be proof of yearly damage, continued for twenty years. *Wood* v. *Kelley,* 30 Maine, 42. To establish the right there must be a perceptible amount of injury throughout the period necessary to gain such right. *Lockwood Co.* v. *Lawrence,* 77 Maine, 229; it takes twenty consecutive years of flowing with some appreciable damage. *Foster* v. *Sebago Imp. Co.,* 100 Maine, 196; Until damaged by flowing, owner not presumed to have relinquished rights. id. Moreover the agreed statement shows that the use of this stream was not continuous for any consecutive twenty years. The continuity is therefore conceded to be broken. The facts, both as to lack of damage, and break of continuity, fail to show any such occupancy or use, as is required to establish a prescriptive title to the easement claimed.

The agreed statement contains this stipulation: "It is agreed that if on the foregoing statement, or so much thereof as is relevant to the issue, the court shall find that the plaintiff under the deeds from said Skillin of March 17, 1866, and September 30th, 1870, or by a prescriptive use of the flowage and riparian rights of said brook, has acquired the right to operate its dams and control the flow of the water between them without interference in the manner in which it and its predecessors in title have been accustomed to for more than forty years, and that the dam built and operated as aforesaid by the defendant is an illegal interference with the rights of the plaintiff, or if the court shall determine that the defendant is liable for the damage caused by the  dirt and other impurities in the plaintiff's ice in the fall of 1914, due to the construction of defendant's new dam as above set forth, judgment shall be entered for the plaintiff and the cause remanded for the determination of damages. If otherwise, judgment shall be entered for the defendant."

This raises the question of reasonable use.

Because, as seen, the erection of the defendant's dam was not an interference with any of plaintiff's rights unless it was an unreasonable

use of the stream.  If we understand the plaintiff's contention it is, that, in view of the facts and circumstances, the erection, itself, of the dam is an unreasonable use of this stream.  Here should be noted a distinction between the reasonable use of a water course, in the erection of a dam, and a reasonable use of it in operating a dam. A dam may be reasonable, and the use of it unreasonable.  We are not concerned with the latter.

At common law no person could maintain a dam even upon his own land and thereby flow out an upper riparian owner.  This rule has been modified by statute but the chief change is the exemption of the dam from being a nuisance and subject to destruction, and giving it the right to flow by paying the damages caused thereby. Accordingly, the proposition is fundamental that the long continued occupation by an upper or lower proprietor, without granted or prescriptive rights, does not in the least affect the question of reasonable use.   If it is a reasonable use, it is just as lawful today as it ever was, and would be just as lawful forty years hence as it is today, if any riparian owner should choose to wait that long before putting it into operation.   The length of time a proprietor has abstained from interrupting the flow of the stream, during which the owner down stream has enjoyed a privilege, of which the upper proprietor now proposes to deprive him, has no bearing whatever upon the question of reasonable use.  Legally the rights of each proprietor are exactly the same as if the one had just built his dam and the one below was just about to build his dam.  *Fibre Co.* v. *Electric Co.*, 95 Maine, 318.  Wherefore the plaintiff's long uses gave him no advantages in this regard.

Hence the issue resolves itself into the question of fact, whether the erection of the defendant's dam was an unreasonable use of this stream?

Reasonable use, as applied to the appropriation of a water course, is as undefinable as reasonable doubt, as applied to criminal evidence. The final arbiter in each case, is not so much the law as the exercise of good sound judgment.   In each particular case it is primarily a question of fact.   The agreed statement contains the following facts: The pond thus formed is a little more than one-fourth the capacity of the lower pond and about one-fifth that of the Pollywonkee and would be filled by the natural flow of the stream in about one-half the time required to fill the lower pond.   If the pond formed by the

defendant's dam is filled, it would not prevent the flow of water from the plaintiff's upper dam to his lower pond except by the amount of evaporation and absorption caused by ponding the water, but if, at any time, the water were below the surface of the defendant's dam, it would prevent the flow of water for such time as might be necessary to raise the water in the defendant's pond to the point of overflowing his said dam. Defendant's engineers have estimated and it is agreed that the approximate capacity of the three ponds is as follows:

| | |
|---|---|
| Pollywonkee or Upper Pond | 4,950,000 cubic feet. |
| Middle Pond | 1,115,500 cubic feet. |
| Lower Pond | 3,950,000 cubic feet. |

Without further comment, we are of the opinion that the above statement of facts fails to show an unreasonable use of this stream by the defendant in the erection of his dam.

The only remaining question is, whether the defendant took an opportune time for the building of his dam, considering the use made of the pond below. Upon this question it must be borne in mind that the plaintiff was entitled only to a reasonable use of the stream; that is, the natural flow of the stream subject to interruption by a reasonable use by other riparian owners. Therefore, the question here is, had the defendant, in view of the time and manner he constructed his dam, unnecessarily interferred with the ice fields of the plaintiff, inasmuch as he had a perfect right to build his dam at a proper season and in a proper manner. The writ shows that the defendant began the erection of his dam about the 15th of October, 1914, and had continued in the construction of it to the date of the writ,—December 4, 1914. In the agreed statement it is said: "During the process of construction of said dam by the defendant, soil, gravel and other materials were dumped in and across the stream and the waters thereof, thereby carrying loam, silt, sticks and rubbish down the stream into the plaintiff's pond, where it froze into the ice and caused the damage set forth in the plaintiff's writ. It is admitted that no more loam, silt, sticks and rubbish were thrown into the stream than was reasonably incident to the construction of a dam of the type and style adopted."

Upon this statement of facts and upon the assumption that the defendant had a legal right to erect his dam where he did, as a riparian

owner, we are unable to discover any violation of the plaintiff's rights. We think the defendant had a right to begin the erection of his dam at any time he saw fit. It was upon his own land and was a legal structure. He had the further right to do all these things which were incidental to the erection of his dam provided he did them in a reasonable and prudent manner, and the proprietor below would have a right to complain only of the injuries caused by the negligence of the defendant. It scarcely happens that one can build a house, especially in close proximity to his neighbor, without causing a good deal of annoyance and perhaps inconvenience, but such annoyance and inconvenience cannot be considered a legal interference.

The plan also shows by measurement that the distance from the defendant's dam to the plaintiff's lower dam is approximately 3000 feet or three-fifths of a mile. We doubt if the defendant could be held to reasonably anticipate, that the debris incident to building his dam, which went into the stream, would go so far in such quantities as to materially injure the ice field below.

This case is entirely different in principle from those cases, with which the books are full, relating to the sluicing of waste material from mills to be carried down upon the proprietor below. These are not legal acts. They are not regarded in law as "reasonably incident" to the operation of a mill as is admitted to have been the dumping of waste materials by the defendant in the erection of his dam.

We are of the opinion that the plaintiff has failed to sustain the burden of proof showing liability on the part of the defendant upon any of the issues raised. According to the stipulation

*Judgment for the defendant.*