HUNTER and wife, Respondents, v. McDONALD and wife, Appellants.†

*No. 75–474.   Submitted on briefs May 4, 1977.—*
*Decided June 1, 1977.*
(Also reported in 254 N.W.2d 282.)

† Motion for rehearing denied, without costs, July 19, 1977.

For the appellants the cause was submitted on the brief of *Hayes & Hayes* of Milwaukee.

For the respondents the cause was submitted on the brief of *John C. Curran* and *Cramer, Multhauf & Curran* of Waukesha.

DAY, J. The question is whether a servient owner's unreasonable interference with the dominant owner's use of an easement is enjoinable though the interference is not a physical encroachment upon the easement.

Plaintiff-respondents, James G. Hunter, Jr., and Bonnie K. Hunter, his wife, and defendants-appellants, William D. McDonald and Valera McDonald, his wife, own adjoining properties on the shore of Okauchee Lake in the town of Oconomowoc in Waukesha county. This is an appeal from a judgment enjoining the defendants from obstructing a right-of-way easement over their property used for ingress and egress to and from the plaintiffs' property. Action was commenced September 3, 1974. Trial to the court was held on June 27 and July 1, 1975.

Defendants acquired their property in 1969. Since 1949, the property has been burdened with an express easement the purpose of which is to provide a way of ingress and egress to and from the adjoining property now owned by the plaintiffs. There is no dispute concerning the existence or location of the roadway, which narrows from a twenty foot wide road located entirely on defendants' property to a ten foot wide road which forks into two roads each of which eventually crosses the boundary into plaintiffs' property. The two prongs of the fork reconnect on the plaintiffs' property forming in effect a turn-around, part of which is on each property.

Defendant William D. McDonald testified that when he and his wife acquired their property the roadway was in poor repair. The gravel surface had many potholes; automobiles traversing it would spray dirt and water collected in the potholes. In addition, plaintiffs' predecessors in title rented the property to persons who drove over the roads at speeds up to twenty-five m.p.h., stirring up dust in the summer. Sometimes these drivers would drive on the lawn; on two occasions light posts on defendants' property were knocked over. In addition, these drivers were a hazard to defendants' children and dogs according to Mr. McDonald.

In 1971 defendants remodeled their home and landscaped their grounds, adding an automatic sprinkling system throughout the property. As a consequence of the aforementioned problems, they had an asphalt surface placed on that part of the ten foot wide easement which lay on their property. The paving contractors were instructed to erect a series of asphalt mounds across the drive approximately five inches high designed as "speed breakers." Defendants erected along their boundary with the plaintiffs a woven wire fence with aluminum slats. The fence contains ten foot openings at the points where each of the prongs of the roadway crosses the property line. Additionally, field stones were placed along the edge of the southern prong of the road, particularly at the point where it curved, and steel posts were driven in the ground adjacent to the driveway at various points around the loop on defendants' property.

There was testimony as to the difficulty of driving a large car between the fence posts and at the same time avoiding the rocks which were placed just beyond the posts at the curve in the road. This problem was particularly serious in the winter.

Plaintiffs purchased their property in May, 1972; the deed described their right-of-way over defendants' real

estate. Plaintiff James Gordon Hunter, Jr., testified that shortly after he and his wife moved in, William Mc-Donald attempted to persuade the Hunters to relinquish their interest in the southern leg of the roadway in exchange for additional parking space and permission to build a garage near their mutual property line. When Mr. Hunter refused, he testified, Mr. McDonald was very angry and said, "You'll see, I'll tighten up this road."

After this meeting defendants had the southern leg of the road blacktopped with additional mounds for speed breakers. Two inch steel posts, roughly fourteen to sixteen inches high also were added along the roadside at the edge of the ten foot right-of-way.

At trial, the plaintiffs argued the speed breakers, the rocks, the steel posts and the fence unreasonably obstructed their use of the road. Several persons testified the speed breakers caused damage to their cars; the fire chief of Okauchee testified he could not bring his fire equipment over the road; the police chief of Oconomowoc Township testified emergency vehicles did not have easy access as a result of the speed breakers. Others testified as to car damage resulting from scraping the steel posts along the side of the road. James Hunter said drivers had difficulty negotiating through the openings in the fence which crossed the two legs of the road at the property line. He said he personally had to direct large vehicles which exited at the south part of the easement.

The trial judge viewed the premises at the close of testimony and then made findings of fact, including the following:

"6. That said right-of-way passes over property owned by the defendants, William D. McDonald and Valera McDonald, his wife, and is ten (10) feet in width.
"7. That the defendants, William D. McDonald and Valera McDonald, have placed or have caused to be placed on said right-of-way and immediately adjacent

thereto obstructions which unreasonably interfere with the use of said right-of-way by the plaintiffs.

"8. That said obstructions include several raised mounds of blacktop across the width of said right-of-way which require vehicle traffic to travel at an unreasonably slow rate of speed or stop entirely in order to successfully negotiate said mounds without causing damage to said vehicles.

"9. That said obstructions include the installation of a woven wire fence with posts located at the edge of said right-of-way on the property line of the plaintiffs' and defendants' property, said fence and fence posts being so located as to unreasonably obstruct the ingress and egress of the plaintiffs.

"10. That said obstructions also include steel posts which the defendants have placed abutting said right-of-way at various locations along said right-of-way, said posts unreasonably interfering with the use of said right-of-way by the plaintiffs.

"11. That said obstructions include the defendants having placed large fieldstone rocks abutting said right-of-way, such rocks interfering with the reasonable use of said right-of-way by the plaintiffs.

"12. That all of the above obstructions and interferences are unreasonable in nature and unreasonably interfere with the right of the plaintiffs to use said right-of-way for ingress and egress to their property."

The court ordered appellants to remove the asphalt mounds and to remove the rocks and steel pipes adjacent to the roadway to a point at least two feet away. Additionally, appellants were ordered to replace the steel posts supporting the fence at a point at least two feet away from the road.

Defendants challenge only that part of the judgment ordering the removal of the posts, fence posts and rocks which the court found to be immediately adjacent to the right-of-way.

Because the easement in question is created by deed, the court must look to that instrument in construing the

relative rights of the landowners. *Rikkers v. Ryan,* 76 Wis.2d 185, 188, 251 N.W.2d 25 (1977). The use of the easement must be in accordance with and confined to the terms and purposes of the grant. 2 *Thompson On Real Property,* sec. 386, p. 556 (1961 Replacement). The right-of-way was created July 9, 1949 by an express grant contained in a warranty deed and states in part,

"Also a right-of-way, to provide a way of ingress and egress to and from the above-described premises and to be used in common with other property owners, including the grantors herein and the grantees of any portion of the real estate now owned by the grantors, over the following described strips of land: . . ."

The right-of-way is described by its center line and specification of its width. The part of the way which is here the subject of controversy is ten feet wide.

Defendants contend any interference caused by the fence, fence posts, steel posts and fieldstones was not wrongful because these objects were placed adjacent to and not upon the right-of-way. The fact these objects do not physically touch the right-of-way, they state, is "crucial" to their overall argument that the trial court abused its discretion in ordering the objects set back at least two feet from the road. The question is whether this fact is as crucial as appellants contend.

An easement "is a permanent interest in another's land, with a right to enjoy it fully and without obstruction. . . ." *Schwartz v. Evangelical Society,* 46 Wis.2d 432, 438, 175 N.W.2d 225 (1970), quoting *Hazeton v. Putnam,* 3 Pin. 107, 115, 3 Chand. 117 (1850). While the owner of property subject to an easement may make all proper use of his land including the right to make changes in or upon it, nevertheless such owner may not unreasonably interfere with the use by the easement holder. *Wisconsin Telephone Co. v. Reynolds,* 2 Wis.2d

649, 652, 87 N.W.2d 285 (1958). This oft-repeated statement of the servient owner's rights and duties virtually always phrases his duty in terms of protecting the easement holder's right to use the easement for the purpose for which it is created. *Also see, Guse v. Flohr,* 195 Wis. 139, 217 N.W. 730 (1928); *reh. den.* 196 Wis. 565, 221 N.W. 10; *F. W. Woolworth Co. v. Vogelsang,* 176 Wis. 366, 187 N.W. 179 (1922); 3 *Tiffany Real Property,* sec. 811 (3rd ed. 1939); 2 *Thompson On Real Property, supra,* sec. 431. The dominant owner's (plaintiffs') interest is not an estate in land, but rather a right to use the land of another for a special purpose not inconsistent with the general property in the owner. 2 *Thompson On Real Property, supra,* sec. 315. Thus, this court has stated, "A conveyance of a right-of-way two rods wide is a conveyance of a right-of-way over a strip of land two rods wide, not a conveyance of the strip of land itself. Title to the land does not pass but only the right to pass over it." *Kleck v. VanSchoyck,* 250 Wis. 413, 418, 17 N.W.2d 490 (1947).

The owners of the easement are constrained to use the right-of-way within the ten foot boundary expressly provided in the grant. But it does not follow that the only enjoinable interference with that use must emanate from within that boundary. At 28 C.J.S. *Easements,* sec. 96, it is stated:

"An obstruction or disturbance of an easement is anything which wrongfully interferes with the privilege to which the owner of the easement is entitled by making its use less convenient and beneficial than before. Obstructions or disturbances are unauthorized and constitute nuisances."

A nuisance is a wrong which may arise from the unreasonable or unlawful use by a person of his own property. 66 C.J.S. *Nuisances,* sec. 1. Thus, physical

encroachment upon the property of the complaining landowner is not required.[1] We conclude that even if the rocks, posts, fence and fence posts do not physically encroach upon the easement, these items may nevertheless unreasonably obstruct the use of the easement to which the plaintiffs are entitled.

The appellants call to the court's attention the case of *Guse v. Glohr*, 195 Wis. 139, 217 N.W. 730 (1928) *reh. den.* 196 Wis. 565, 221 N.W. 10 in which this court held the servient owner was entitled to maintain a fence along the boundary of a private way created by express easement. In *Guse,* the servient owner had consented to a private way along its land for the benefit of an adjoining landowner. This way ran along their mutual boundary line. The grantee enlarged the way by increasing its width on his own side of the property boundary. Thereupon the servient owner erected a fence along the boundary, dividing the widened road. In this factual context this court said, the servient owner's "right to maintain a fence on that line seems to be beyond controversy. . . ." 195 Wis. at 146.

What distinguishes *Guse,* from the case at bar is that in *Guse,* the easement owners had full use of the way as it was described in the conveyance creating it. The issue in that case was whether the easement owners could in effect enlarge their use of the easement by adding to it on their own land, not whether their use within the terms of the grant was obstructed.

Defendants do not attack the trial court's finding the rocks, post, fence and fence posts unreasonably interfered with the respondents' use of the way, a finding not against the great weight and clear preponderance of the evidence. We hold the mere fact these items did not physically encroach upon the way is not determinative.

[1] *See, Brearton v. Fina,* 3 Misc.2d 1, 155 N.Y.S. 399, 406 (1956).

Once the wrongful interference was established, the court had the power to adapt its remedy to the exigencies and needs of the case. *American Med. S., Inc. v. Mutual Fed. S. & L.,* 52 Wis.2d 198, 205, 198 N.W.2d 529 (1971).

In the case at bar there is no evidence the plaintiffs have abused their right of ingress and egress. The only inconvenience suffered by the defendants is a predictable incident of the right of ingress and egress to which the plaintiffs are expressly entitled by terms of the deed.

The trial court's requirement of only two feet on each side of the ten foot right-of-way to be clear of obstructions was reasonable.[2]

*By the Court.*—Judgment affirmed.

---

[2] Compare the minimum two rod right-of-way a town may condemn for ingress and egress between a landlocked parcel and a public highway. Sec. 80.13, Stats., *Guse, supra,* 195 Wis. at 147.