Michael M. CASSIDY, Howard Larson and
Donald Larson, Petitioners-Appellants,

v.

STATE of Wisconsin DEPARTMENT OF
NATURAL RESOURCES, Respondent.†

Court of Appeals

*No. 84–2467. Argued April 10, 1986.—Decided May 15,
1986.*

(Also reported in 390 N.W.2d 81.)

*ℓ*

† Petition to review denied.

For the petitioners-appellants there were briefs by *Lloyd A. Schneider, Howard C. Johnson* and *Michael M. Cassidy* and *Schneider Law Office* of McFarland, and oral argument by *Michael M. Cassidy.*

For the respondent State of Wisconsin Department of Natural Resources there was a brief by *Bronson C. La Follette,* attorney general, and *Robert A. Selk,* assistant attorney general, and oral argument by *Robert A. Selk,* assistant attorney general.

For the applicant Madison Metropolitan Sewerage District there was a brief by *Eugene O. Gehl* and *Paul W. Schwarzenbart* and *Brynelson, Herrick, Gehl & Bucaida* of Madison, and oral argument by *Paul W. Schwarzenbart.*

Before Gartzke, P.J., Dykman and Eich, JJ.

EICH, J. Michael Cassidy and Howard and Donald Larson appeal from a judgment affirming a decision of the Department of Natural Resources. The department granted a permit to the Madison Metropolitan Sewerage District to maintain a dike on

the bed of Grass Lake, a navigable body of water in Dane County.

The dispositive issues are: (1) whether the district is a "riparian owner" entitled to apply to the department for a lakebed structure permit under sec. 30.12(2), Stats.; and (2) if not, whether sec. 66.24(5)(c), Stats., authorizes the district to maintain the structure regardless of riparian ownership. We conclude that the district is not entitled to maintain the structure under either statute, and we therefore reverse.[1]

In 1949, the state ordered the district to limit, and eventually terminate, the discharge of treated effluent into the Madison lakes. The district decided to divert the discharge into the Yahara River and began planning the construction of a diversion ditch, part of which was to run along the edge of Grass Lake. At one point, the path of the diversion crossed the lakebed from shore to shore, and the district designed a system of dikes and barriers to be placed on the bed to keep the effluent from flowing into the lake.

Although it possessed condemnation powers and could have acquired the land in fee simple, the district chose to secure easements from landowners in the project's path. The Larsons own much of the land abutting Grass Lake, and the easement they granted to the district includes the points where the ditch/dike system enters and exits the lakebed. The easement described the Larsons as the "owners"[2] of the land and stated that

---

[1] Appellants also argue that the structure is an illegal obstruction to navigation. Because we reverse on the permit issue, however, we need not reach that question.

[2] At the time the easement was acquired, the Larsons' predecessors in title, their parents, Helmer and Irene Larson, owned

they were granting the district "an interest in [the] lands for the purpose of constructing and maintaining an open ditch for the transmission of sewage effluent."

With all necessary easements in hand, the district began construction of the dike system. At the time, all parties mistakenly believed that Grass Lake was legally non-navigable and that, as a result, no permits were necessary for the project. Construction was completed in 1959, and the system has been in operation ever since.

In the 1970's, the Larsons and the district became involved in a series of legal disputes over the project. At some point, it was discovered that Grass Lake was navigable and that the structure was subject to the Navigable Waters Law, ch. 30, Stats. The district belatedly applied to the department for a permit to construct and maintain the dike system.

Section 30.12(1)(a), Stats., states that it is unlawful to place any structure on the bed of a navigable water without first obtaining a permit from the Department of Natural Resources. Section 30.12(2) authorizes the department to grant permits for such structures to "riparian owner[s]" if certain conditions are met.

After several days of hearings, the department concluded that even though the district did not hold title to any lands adjoining the lake, the Larsons' easement gave it the status of a "riparian owner" within the meaning of sec. 30.12(2), Stats. The decision emphasized that, because the nature of the ditch and dike system should have been apparent to the Larsons from the terms of the easement, "[i]t is clear that . . . they conveyed those riparian rights . . . necessary to accom-

the property. The easement refers to the Larsons as "owner[s]" at four points and twice describes them as "vendor[s]."

156

plish the [described] acts." The department then determined that the other statutory conditions had been met and granted the permit.

Cassidy[3] and the Larsons sought judicial review of the department's action. The circuit court affirmed the decision, holding that riparian rights are alienable from fee ownership and that the department "did not err" in concluding that the Larson's easement granted the district "sufficient riparian rights to obtain a permit under Section 30.12, Stats." Cassidy and the Larsons appeal.

In reviewing decisions of administrative agencies where questions of law are involved, we give due weight to the agency's technical competence and specialized knowledge, and we will not substitute our judgment for that of the agency if its decision has a rational basis and does not conflict with the constitution or prior court decisions. *American Motors Corp. v. LIRC,* 114 Wis. 2d 288, 293, 338 N.W.2d 518, 520 (Ct. App. 1983), *aff'd,* 119 Wis. 2d 706, 350 N.W.2d 120 (1984). Here, however, the issue involves the construction of a nontechnical statute. In such cases, where technical expertise is irrelevant and the courts are as competent as the agency to decide the legal question, no such deference is required. *Dept. of Revenue v. Milwaukee Refining Corp.,* 80 Wis. 2d 44, 48, 257 N.W.2d 855, 857–58 (1977).

---

[3] Cassidy is neither a landowner nor a party to the easement. His status as a party to the judicial review proceedings is the result of his "citizen's complaint" to the department under sec. 30.14(2), Stats. Neither the department nor the district have challenged Cassidy's status as a party, and we do not decide the question.

We view the department's central conclusion—that the easement conveyed sufficient "riparian rights" to permit the district to obtain a permit for the structure—as particularly suspect.

The state holds the beds underlying navigable waters in trust for all its citizens. *Muench v. Public Service Comm.,* 261 Wis. 492, 501, 53 N.W.2d 514, 517 (1952). The legislature, in furtherance of that trust, has declared it to be unlawful to place any structure on the bed of a navigable water unless a permit has been granted by the department, or unless the structure is otherwise authorized by statute. There is specific legislative authorization for construction of wharves and piers "in aid of navigation." Section 30.13(1), Stats., allows riparian proprietors[4] to place such structures in navigable waters without a permit so long as they do not extend beyond established pierhead lines and do not interfere with other riparian or public rights in the waters. Structures other than wharves and piers, however, may be placed on a river or lakebed only by a "riparian owner," and then only after the owner applies for and receives a permit. Section 30.12(2).

The district, citing *Mayer v. Grueber,* 29 Wis. 2d 168, 175, 138 N.W.2d 197, 203 (1965), argues that "riparian rights are fully alienable," and that the Larson's easement constituted a grant of all the rights they possessed by reason of their ownership of the upland.

---

[4] A "proprietor" is the equivalent of an "owner." *Webster's Third New International Dictionary* 1819 (1976); *Black's Law Dictionary* 1098 (5th Ed. 1979). Courts in other states considering the phrase "riparian proprietor" have found it to be interchangeable with "riparian owner." *Grant v. Hemphill,* 59 N.W. 263, 265 (Ia. 1894); *Neely v. Detroit Sugar Co.,* 101 N.W. 664, 667 (Mich. 1904); *Young v. City of Asheville,* 86 S.E.2d 408, 411 (N.C. 1955).

First, *Mayer* concerned an artificial body of water, and different rules apply. Unlike the beds of natural waters, the trust doctrine does not apply to artificial lakes. As to the latter, "all of the incidents of ownership are vested in the owner of the land." *Id.* at 176, 138 N.W.2d at 204. We do not read *Mayer* as broadly as the district. Second, there is no riparian right to build a structure on the bed of a navigable body of water.

Riparian rights are well defined in Wisconsin law. They include: the right to reasonable use of the waters for domestic, agricultural and recreational purposes;[5] the right to use the shoreline[6] and have access to the waters;[7] the right to any lands formed by accretion or reliction;[8] the right to have water flow to the land without artificial obstruction;[9] the limited right to intrude onto the lakebed to construct devices for protection from erosion;[10] and the right, now conditioned by statute, to construct a pier or similar structure in aid of navigation.[11]

The Larsons could not convey to anyone, by easement, deed or other conveyance, the "riparian right" to place a structure on the lakebed, for no such "right" exists. Structures may be placed on the beds of navigable waters only as the legislature directs. And, even if the

---

[5] *State v. Bleck,* 114 Wis. 2d 454, 466, 338 N.W.2d 492, 498 (1983); *Doemel v. Jantz,* 180 Wis. 225, 231, 193 N.W. 393, 396 (1923).

[6] *Bino v. Hurley,* 273 Wis. 2d 10, 16, 76 N.W.2d 571, 575 (1956).

[7] *Rondesvedt v. Running,* 19 Wis. 2d 614, 621, 121 N.W.2d 1, 6 (1963).

[8] *De Simone v. Kramer,* 77 Wis. 2d 188, 197, 252 N.W.2d 653, 657 (1977).

[9] *Boorman v. Sunnuchs,* 42 Wis. 233, 242 (1877).

[10] *Att'y Gen. ex rel. Becker v. Bay Boom W.R. & F. Co.,* 172 Wis. 363, 375, 178 N.W. 569, 574 (1920).

[11] *Doemel,* 180 Wis. at 231, 193 N.W. at 396.

eligibility to apply for a permit may be considered a "right," its exercise is governed by sec. 30.12(2), Stats., and the question is whether the district is a "riparian owner" within the meaning of that statute. The district argues that because it "owns" an easement over the Larsons' land, and the Larsons are riparians, it is a riparian "owner" in the statutory sense. We do not believe the phrase is nearly as broad as the district suggests.

We start with the proposition that undefined nontechnical words in a statute are to be given their ordinary and accepted meaning. *State ex rel. First Nat. Bank & Trust v. Skow,* 91 Wis. 2d 773, 781, 284 N.W.2d 74, 77 (1979). To "own" is "to have or hold as property . . . [to] have a rightful title to, whether legal or natural." *Webster's Third New International Dictionary* 1612 (1976). The statute unambiguously limits the eligibility to apply for a permit to riparian owners: those who "own;" that is, those who hold "rightful title" to the riparian land.

Other state courts construing the term "riparian owner" have equated it with legal title to the upland.[12] Specifically, in *Allen v. Potter,* 316 N.Y.S.2d 790, 793 (N.Y. Sup. Ct., 1970), *aff'd,* 323 N.Y.S.2d 409 (N.Y. App. Div. 1971), the court held that the holder of a lake

---

[12] *State v. Pennsylvania Railroad Company,* 228 A.2d 587, 594 (Del. Super. 1967); *Stoner v. Patten,* 63 S.E. 897, 898 (Ga. 1909); *Leitch v. Sanitary Dist. of Chicago,* 17 N.E.2d 34, 36 (Ill. 1938); *Kraver v. Smith,* 177 S.W. 286, 291 (Ky. 1915); *Portland Sebago Ice Co. v. Phinney,* 103 A. 150, 152 (Me. 1918); *Department of Natural Resources v. Adams,* 377 A.2d 500, 505 (Md. Ct. Spec. App. 1977); *Turner Subdiv. Property Owner Assoc. v. Schneider,* 144 N.W.2d 848, 850 (Mich. App. 1966); *In re West 205th St.,* 147 N.E. 361, 362 (N.Y. 1925); *Sayles v. City of Mitchell,* 245 N.W. 390, 391 (S.D. 1932).

access easement over riparian land's lakeshore was not a "riparian owner." *See also Magnolia Petroleum Co. v. Dodd,* 81 S.W.2d 653, 655 (Tex. Com. App. 1935) (holder of a lease interest in the upland, which the court termed a "mere easement," held not a "riparian owner").

Holders of easements gain no ownership interest in the underlying land, for an easement "is not an estate in land, but rather a right to use the land of another . . . ." *Hunter v. McDonald,* 78 Wis. 2d 338, 344, 254 N.W.2d 282, 285 (1977). "[T]itle does not pass [to the holder of the easement], but only a right of use or privilege in the land . . . ." *Polebitzke v. John Week L. Co.,* 157 Wis. 377, 381, 147 N.W. 703, 705 (1914). *See also Hunter,* 78 Wis. 2d at 344, 254 N.W.2d at 285. The district's easement from the Larsons does not contain any language indicating that it does not, or should not, come within the rule. Indeed, as indicated above, the document itself identifies the Larsons as the "owners" of the land.

■ We conclude that the district's easement over the Larsons' land does not grant it the status of a riparian owner within the meaning of sec. 30.12(2), Stats.

The district argues alternatively that it has the right, independent of ch. 30, to build and maintain the structure. The origin of that claimed right is sec. 66.24(5)(c), Stats., which provides, in part, that sewerage districts

> shall have power to lay or construct and to forever maintain, without compensation to the state, any part of the utility system, or of its works, or appurtenances, over, upon or under any part of the bed of any river or of any land covered by any of the nav-

igable waters of the state, the title to which is held by the state, and over, upon or under canals or through waterways, and if the same is deemed advisable by the commission, the proper officials of the state are authorized and directed upon application of the commission to execute, acknowledge and deliver such easements, or other grants, as may be proper for the purpose of carrying out the district operations.

The district does not contend that the statute gives it the absolute right to construct and maintain the dike system. It acknowledges (though the statute itself does not so state) that the "public interest standards of sec. 30.12(2), Stats., continue to apply." This qualified reading of the statute suggests that the district feels, as we do, that if sec. 66.24(5)(c), Stats., unconditionally authorized utilities to place structures on the beds of navigable lakes, it would be in irreconcilable conflict with sec. 30.12 and the trust doctrine.

■ Section 66.24(5)(c), Stats., however, says nothing about the beds of "navigable waters" as that phrase appears in statements of the common-law trust doctrine and in the statutes enacted thereunder, secs. 30.12(1)(a) and (b) and 30.12(2)(a)3, 4, Stats. Nor does sec. 66.24(5)(c) contain any reference to permits, "riparian owners," or the Navigable Waters Law. In our view the statute, read in conjunction with ch. 30, says quite simply that a sewerage district, assuming it meets *all* of the requirements of sec. 30.12—including riparian ownership—may maintain parts of its system over state-owned lakebeds without paying special compensation to the state. It does not remove riparian owner-

162

ship as a condition of eligibility to apply for a permit under sec. 30.12(2).

*By the Court.*—Judgment reversed.