Donald URBAN and Susan Urban, Plaintiffs-Appel-
lants,

v.

David GRASSER and Heritage Mutual Insurance Com-
pany, Defendants-Respondents,

JOHN ALDEN LIFE INSURANCE COMPANY, Defendant.

Supreme Court

*No. 99–0933. Oral argument November 29, 2000.—Decided
June 14, 2001.*

2001 WI 63

(Also reported in 627 N.W.2d 511.)

675

For the plaintiffs-appellants there were briefs by *David P. Wilk, Robert L. Jaskulski* and *Domnitz & Mawicke*, Kenosha, and oral argument by *David P. Wilk*.

For the defendants-respondents there was a brief by *Arthur P. Simpson* and *Simpson & Deardorff, S.C.*, Milwaukee, and oral argument by *Arthur P. Simpson*.

¶ 1.   WILLIAM A. BABLITCH, J.   Plaintiff Donald Urban (Urban) appeals a circuit court decision concluding that defendant David Grasser (David) was entitled to recreational immunity under Wis. Stat.

§ 895.52 (1995–96).[1] Urban was crossing David's property to use his boat, which was located on an adjacent property. David's father, Paul Grasser (Paul) owned the adjacent property. Paul held an easement for ingress and egress over David's property pursuant to a written agreement between them and had granted permission to Urban to use David's property in accessing his boat. David's property constituted the only legal means available for Urban to access his boat. A dog jumped out at him. Urban fled and jumped from David's property onto a next-door neighbor's concrete driveway, injuring himself. Urban sued David, and David claimed recreational immunity.

¶ 2. The issue is whether the facts of this case give rise to recreational immunity for David. We conclude that the facts entitle David to immunity and that no exceptions to immunity apply. Accordingly, we affirm the circuit court's decision.

I

¶ 3. On July 19, 1997, Urban purchased a boat from Paul. The boat was docked at a boat slip on Paul's property. After Urban purchased the boat, he intended to dock the boat at another location. However, because Urban needed time to secure the other location, Paul agreed that Urban could temporarily dock the boat on his property. Paul did not charge Urban for the use of the boat slip.

¶ 4. A description of the property is necessary to understand Urban's use of the property and the occurrence of his injury. The property at issue was a rectangular parcel of property that was divided into

---

[1] All subsequent references to the Wisconsin Statutes are to the 1995–96 version unless otherwise indicated.

two separate lots of approximately equal size. One lot occupied the western half of the property and was owned by David; the other lot occupied the eastern half and was owned by Paul. David's property was bordered to the west by a street. Paul's property was bordered to the east by waterfront, which is where the boat slips were located. To get to his new boat, Urban was required to park his automobile on the street, walk across David's property, and walk across Paul's property to the boat slip.

¶ 5. To the north of both David and Paul's properties was a concrete driveway that was owned by a neighbor. The driveway declined from west to east while the property owned by David and Paul remained level. Consequently, from west to east, David and Paul's property was at a gradually higher level than the neighboring driveway. A retaining wall separated the driveway from David and Paul's properties. The top of this wall remained level with David and Paul's properties, but the bottom of the wall declined from west to east in the same manner as the driveway.

¶ 6. Prior to 1981, Paul owned all of the property at issue in this case. In 1981, however, David contracted with Paul to purchase the western portion of the property. The contract granted a perpetual easement to Paul over a portion of David's property and provided as follows:

> The land [the property conveyed to David] shall be subject to a perpetual easement in favor of Vendor [Paul and his wife] over the south 10 feet of the west 110 feet as [sic] and for ingress and egress and to a perpetual easement over the entire parcel except the 110 west feet thereof and said easement for ingress and egress, said easement to allow Vendors free use of the easement area for themselves and

those to whom they shall lease boat slips in the city of Kenosha harbor and guests. Purchasers shall also have the right to use of the land covered by the west easement provided it does not interfere with the easement rights of Vendors and their lessees.

The easement over David's property constituted the only legal means available for Paul, his guests, and lessees of the boat slips to access Paul's property and the boat slips.

¶ 7.  On the day that he purchased the boat, Urban, along with members of his family, made several trips from his automobile to the boat slip, crossing David's property each time. Urban slept on the boat that night. The next day, July 20, 1997, he again accessed the boat several times by using the same route.

¶ 8.  During the early evening of July 20, 1997, Urban was walking back from the boat slip when he noticed a dog on David's property. The dog, a boxer named Baby, was owned by David. The dog began growling and barking at Urban and then proceeded to chase him. Although the dog was chained to a tree on David's property, Urban did not notice the chain, and he began running to the north. Without stopping or looking back, Urban jumped from the property onto the concrete driveway. At the point where he jumped, the property was about ten feet higher than the driveway. The parties do not contest that Urban jumped from David's property. Urban seriously injured his heel when he landed.

¶ 9.  Urban and his wife (plaintiffs) filed a complaint against David and his insurers, Heritage Mutual and John Alden Life Insurance Company. In the complaint, the plaintiffs alleged two causes of action. First, they alleged that, pursuant to Wis. Stat.

§ 174.02(1), David was strictly liable for damages caused by the dog. Second, they alleged that David was "negligent in the care, custody, control supervision, and/or shelter" of the dog "in failing to keep the dog, by leash or other means."

¶ 10.  David and Heritage Mutual (defendants)[2] moved for summary judgment, arguing that David was immune from liability pursuant to Wis. Stat. § 895.52, the recreational immunity statute. The circuit court granted the defendants' motion. The plaintiffs appealed, and we accepted the court of appeals' certification on all issues raised by the plaintiffs before the court of appeals. However, because we conclude that the recreational immunity statute applies to deny recovery to the plaintiffs in this case, we need not reach the remaining issues.

## II

¶ 11.  We address only whether the facts of this case give rise to recreational immunity and entitle David to summary judgment. We deliberately state the issue differently than that posed by the court of appeals in its certification. The court of appeals presented the issue as follows: "This case asks whether a property owner, holding a servient property interest, may claim recreational immunity for injuries suffered by persons who used the easement to cross the property as the guest of the easement holder, the dominant property interest."

¶ 12.  Although the court of appeals correctly framed the issue, we conclude that our statement of the

---

[2] John Alden Life Insurance Company was not part of the summary judgment motion and accordingly is not part of this appeal.

issue is more appropriate because it emphasizes the intensely fact-driven nature of recreational immunity cases. Circuit courts, the court of appeals, and this court have wrestled with recreational immunity since the legislature first provided for such immunity under the law. We have all been frustrated by the seeming lack of basic underlying principles in our efforts to state a test that can be easily applied. The principle that the purpose of the legislation is to encourage landowners to open their property to recreational users has provided only limited usefulness.

¶ 13.   We conclude that we can do little more than repeat what has been stated continually in prior cases, that is, that each case requires an examination of all the circumstances surrounding the activity, keeping in mind the legislative purpose. We have identified a number of those aspects: the intrinsic nature of the activity, the purpose of the activity, the consequences of the activity, and the intent of the user. *See Sievert v. American Family Mut. Ins. Co.*, 190 Wis. 2d 623, 631, 528 N.W.2d 413 (1995); *Linville v. City of Janesville*, 184 Wis. 2d 705, 716, 516 N.W.2d 427 (1994). An examination of prior cases interpreting Wis. Stat. § 895.52 also leads us to conclude that there are at least two other factors to take into account: the nature of the property and the intent (or lack thereof) of the property owner.

¶ 14.   The nature of the property can give us insight into the nature of the activity. *See Linville*, 184 Wis. 2d at 717; *Nelson v. Schreiner*, 161 Wis. 2d 798, 802, 469 N.W.2d 214 (Ct. App. 1991) ("Actions whose intrinsic nature are recreational and are conducted at a public facility or service dedicated to exercise, relaxation or pleasure may be recreational activities without

further proof of the actor's mental purpose."). Likewise, the intent of the owner can give us important perspective. In most cases, it would seem to make little sense to give an owner recreational immunity when in fact the owner does not intend to open the property to recreation, and even more so, when the owner takes positive steps to prevent recreational use. *See Minnesota Fire & Cas. Ins. Co. v. Paper Recycling of LaCrosse*, 2001 WI 64, ¶ 25, 244 Wis. 2d 290, 627 N.W.2d 527.

¶ 15. None of the factors enumerated above, viewed in isolation, are determinative. In any given case, one or more factors may have greater weight, but all should be looked at in their totality.

### III

¶ 16. We review a grant of summary judgment using the same methodology as the circuit court. *Meyer v. Sch. Dist. of Colby*, 226 Wis. 2d 704, 708, 595 N.W.2d 339 (1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2) (1997–98). Resolution of this case requires an interpretation of the recreational immunity statute and its application to undisputed facts. Interpretation of this statute presents a question of law that we decide de novo, while benefiting from the circuit court's analysis. *Meyer*, 226 Wis. 2d at 708.

¶ 17. Wisconsin Stat. § 895.52(2)(b) provides in relevant part that "no owner. . .is liable for. . .any injury to. . .a person engaging in a recreational activity on the

owner's property. . . ." Pursuant to this statute, David claims that he is immune from liability for Urban's injury.

¶ 18.   We must first determine whether David is an "owner" under the statute. Wisconsin Stat. § 895.52(1)(d) defines "owner" as "a person, including a governmental body or nonprofit organization, that owns, leases or occupies property." In this case, it is undisputed that David owned the property adjacent to Paul's property. Although Paul held an easement over David's property, Paul's interest in the property did not require David to relinquish ownership of his property. "An easement creates two distinct property interests: the dominant estate, which enjoys the privileges granted by an easement; and the servient estate, which permits the exercise of those privileges." *Atkinson v. Mentzel*, 211 Wis. 2d 628, 637, 566 N.W.2d 158 (Ct. App. 1997). Title to the property, however, does not pass to the dominant owner; only the right to pass over it is granted. *Hunter v. McDonald*, 78 Wis. 2d 338, 344, 254 N.W.2d 282 (1977). The dominant owner does not obtain an estate in the property, but only a right to use the land not inconsistent with the general property of the servient owner. *Id.* Thus, David is an "owner" under the statute.

¶ 19.   We next determine whether Urban was "engaging in a recreational activity on [David's] property." This determination requires application of the statutory definition of "recreational activity" to Urban's activity. This definition states:

> "Recreational activity" means any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure, including practice or instruction in any

such activity. "Recreational activity" includes, but is not limited to, hunting, fishing, trapping, camping, picnicking, exploring caves, nature study, bicycling, horseback riding, bird-watching, motorcycling, operating an all-terrain vehicle, ballooning, hang gliding, hiking, tobogganing, sledding, sleigh riding, snowmobiling, skiing, skating, water sports, sight-seeing, rock-climbing, cutting or removing wood, climbing observation towers, animal training, harvesting the products of nature and any other outdoor sport, game or educational activity, but does not include any organized team sport activity sponsored by the owner of the property on which the activity takes place.

Wis. Stat. § 895.52(1)(g).

¶ 20. However, before we can apply this definition, we must first resolve a dispute between the parties concerning the scope of Urban's activity. The issue is whether Urban's activity on Paul's property should be factored into our determination. The plaintiffs argue that any activity undertaken by Urban on Paul's property is immaterial to our determination. They assert that we must only examine Urban's activity on David's property, and in this respect, we must conclude that Urban's mere act of walking, without more, cannot support a finding of recreational activity. In contrast, the defendants argue that Urban's activity on David's property must be considered in light of his activity on Paul's property, and when considering the activity in this manner, it must be regarded as walking to access his boat. We agree with the defendants.

¶ 21. Our examination looks at Urban's activities on both properties because the activities are "inextricably connected." This connection is evidenced, in the first instance, by the fact that Urban had to cross David's property because it was the only legal means

available for Urban to access his boat. In *Hupf v. City of Appleton*, 165 Wis. 2d 215, 221, 477 N.W.2d 69 (Ct. App. 1991), the court recognized that a walk is "inextricably connected" to another activity when that person walks by the "only available avenue" from the activity. In such instances, the *Hupf* court reasoned that the walk should have the same immune or non-immune status of its connected activity. *Id.* This reasoning suggests that it is appropriate for a court, under similar facts, to consider the activity that is connected to the walk in determining whether the walk is a "recreational activity." Even though *Hupf* only involved one property owner, we conclude that its reasoning applies equally to this case. *See also Lasky v. City of Stevens Point*, 220 Wis. 2d 1, 7–8, 582 N.W.2d 64 (Ct. App. 1998) (suggesting that the reasoning from *Hupf* would have been applicable if the plaintiff had been walking on the "only available avenue").

¶ 22.   The connection between the walk and the use of the boat is also evidenced by the fact that Urban's use of David's property to access his boat resulted from permission from Paul. Paul held a dominant interest in an easement over David's property, and he exercised his rights under the terms of the easement agreement by granting permission to Urban. Urban then utilized David's property within the terms of the easement agreement. These facts provide additional support for our conclusion that the walk was inextricably connected to the activity on Paul's property. As a result, we will consider Urban's activity on Paul's property in our determination.

¶ 23.   It is important to note that we do not conclude that every walk and its related activity must be

considered together. The walk and the related activity will only be considered collectively when it can be shown, under facts similar to this case or to *Hupf*, that the activities are inextricably connected.[3]

¶ 24.   We now turn to the question of whether the facts of this case give rise to the conclusion that Urban's walk on David's property was "recreational activity" within the meaning of the statute.

¶ 25.   The definition of "recreational activity" contains three parts:

> . (1)   a broad definition stating that a recreational activity is "any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure," (2) a list of 28 specific activities denominated as recreational, and (3) a second broad definition, directing that a recreational activity can be "any other outdoor sport, game or educational activity."

*Sievert*, 190 Wis. 2d at 629.

¶ 26.   As stated in *Minnesota Fire*, 2001 WI 64, ¶ 10, "we must construe the first part's broad definition in light of the second part's list of 28 specific recreational activities, and the third part's broad definition providing that a recreational activity is 'any other outdoor sport, game or educational activity.' " (citation omitted).

¶ 27.   The sole purpose of Urban's walk over David's property was to gain access to his boat to use

---

[3] The dissent asserts that our opinion offers no logical stopping point. We disagree. Our conclusion is strictly based on the uniqueness of the properties at issue in this case, in light of the landlocked nature of Paul's property and the existence of an easement. The hypotheticals raised by the dissent do not reflect the same unique connection shared by the properties in this case. *See* dissent at ¶ 57.

for recreational purposes. Throughout the weekend, including the day on which his injury occurred, he carried various items from his automobile to the boat for purposes of cleaning it and preparing it for future trips. Indeed, preparing the boat in this manner is one part of using the boat for pleasure and recreation. During this time, he and his family members also crossed David's property to partake in a party on the boat. In addition, Urban crossed the property to practice driving his boat for a short time on the day he was injured. This particular activity—driving the boat—is specifically enumerated in the definition of "recreational activity" as "water sports." On the whole, these activities were undertaken for relaxation or pleasure. Urban's walk was recreational because Urban needed to cross the property to engage in recreational activities on his boat. David's property was the only legal means available to access the boat. The walk was an integral part of these activities.

¶ 28. We recognize that Urban's walking is not immediately identifiable as one of the 28 listed activities. However, an activity does not need to fall within the direct terms of the definition to be characterized as a "recreational activity." *See Sievert,* 190 Wis. 2d at 629–30. Instead, as noted in *Sievert,* the legislature expressly stated that this definition is "intended merely to provide examples of activities constituting recreational activities and that 'where substantially similar circumstances or activities exist' the legislation should be construed liberally to protect the property owner." *Id.* at 630 (citing 1983 Wis. Act 418, § 1). As enumerated in *Sievert,* we adopted the following test in *Linville,* 184 Wis. 2d 705, to determine whether an activity is "substantially similar":

[T]he test "considers the purpose and nature of the activity in addition to the [property] user's intent." "The test requires examination of all aspects of the activity. The intrinsic nature, purpose and consequence of the activity are relevant. While the injured person's subjective assessment of the activity is relevant, it is not controlling. Thus, whether the injured person intended to recreate is not dispositive,. . .but why [the person] was on the property is pertinent."

*Sievert*, 190 Wis. 2d at 631 (quoting *Linville*, 184 Wis. 2d at 716) (second and third alterations in original) (internal citations omitted).

¶ 29. We conclude that, under this test, Urban's activity on David's property is substantially similar to the activities listed under the definition. After his purchase of the boat was completed, Urban continued to walk across David's property to access his boat, and the consequence of his crossing the property was the use of his boat for recreation. Urban stated that he purchased the boat solely for recreation and that he had to cross David's property to carry out this goal. Indeed, while on David's property, Urban was not exercising or throwing a ball or engaging in activities of this nature. However, our examination looks at all aspects of the activity, including the reason the person was on the property. In this case, Urban's acts and statements indicate that his only reason for being on David's property was to access his boat for recreation.

¶ 30. We also note that extending immunity to David in this instance would fulfill the legislative purpose behind the recreational immunity statute. This legislative purpose seeks "to encourage property owners to allow use of their lands for recreational activities by removing the potential for liability arising out of

negligence actions brought against them by persons who use the land for such recreational purposes." *Verdoljak v. Mosinee Paper Corp.*, 200 Wis. 2d 624, 635, 547 N.W.2d 602 (1996). Granting immunity in this case encourages David and others similarly situated to allow people to cross over their land to engage in recreational activities. Thus, the legislative purpose would be served.

¶ 31.   In addition, the intent of the landowner with respect to the use of his property is helpful. David's easement to Paul provided an "easement to allow Vendors [and guests of the vendors] free use of the easement area for themselves and those they shall lease boat slips in the city of Kenosha harbor and guests." This easement evinces at the very least no intent to restrict the use of the property to non-recreational activities. In light of the broadness of the language, it appears to anticipate that recreational activity could occur.

¶ 32.   In light of all of the above, we conclude that Urban's walking on David's property was "recreational activity," which gives rise to recreational immunity.

## IV

¶ 33.   We now examine whether any exceptions to recreational immunity apply. In this case, the plaintiffs first argue that immunity should not apply because Urban was Paul's "social guest," and therefore, the exception under Wis. Stat. § 895.52(6)(d) applies. This section provides that immunity does not apply if:

> The death or injury occurs on property owned by a private property owner to a social guest who has been expressly and individually invited by the pri-

vate property owner for the specific occasion during which the death or injury occurs, if the death or injury occurs on any of the following:

. . .

    2.   Residential property.

Wis. Stat. § 895.52(6)(d). The plaintiffs argue that Urban was Paul's social guest because Paul specifically invited Urban on his land to use the boat slip. In addition, the plaintiffs assert that, because this exception applies to Paul, it should similarly apply to David, despite the fact that David did not invite Urban on his property.

¶ 34.   This social guest exception was enacted in 1984 as part of 1983 Wisconsin Act 418. This exception came about after this court's decision in *LePoidevin v. Wilson*, 111 Wis. 2d 116, 330 N.W.2d 555 (1983). In *LePoidevin*, a property owner sought immunity under Wis. Stat. § 29.68 (1975) for injuries to a person who dove from a pier into shallow water on the owner's property. *Id.* at 119. The injured person had been specifically invited on the property by the owner's son to swim. *Id.* at 118–19. We concluded that the owner could not gain immunity from liability because the injured person was a social guest who had been specifically invited onto the property. *Id.* at 131–32. We also noted that the property owner had "not opened his land to the 'public' generally nor ha[d] he given permission to one or more members of the 'public' to use the land for recreational purposes. He opened his land to a social guest who was invited onto the land." *Id.* at 131.

¶ 35.   The legislative history of 1983 Wisconsin Act 418 indicates that this social guest exception was included to ensure that a property owner does not gain

immunity under circumstances similar to *LePoidevin*.[4] Indeed, the language of the social guest exception mirrors language from *LePoidevin*. This case, however, does not involve circumstances similar to *LePoidevin* where the injured person was a social guest who was expressly and individually invited onto the property. Instead, Urban was granted permission by Paul to use the property. Such permissive entrants are outside the ambit of this exception. *See Waters v. Pertzborn*, 2001 WI 62, ¶ 40, 243 Wis. 2d 703, 627 N.W.2d 497 (citing *Ervin v. City of Kenosha*, 159 Wis. 2d 464, 475, 464 N.W.2d 654 (1991)).

¶ 36. Finally, we address whether the "profit" exception under Wis. Stat. § 895.52(6)(a) applies. This section provides that immunity will not apply for property owners who profit from another's recreational use of their property. Specifically, this section provides in relevant part:

> Subsection (2) does not limit the liability of a private property owner. . .whose property is used for a

---

[4] Specifically, a letter contained in the drafting record for this act notes that "[i]t is equally clear that the proposed legislation is not intended to cover the case where a landowner specifically invites a guest over as per [*LePoidevin*]." Letter from John R. Zillmer, Redford & Zillmer, to Ruth Reinl, Office of Senator David Helbach 4 (Oct. 11, 1983).

We recognize that, in enacting 1983 Wis. Act. 418, the legislature "intended to overrule any previous Wisconsin supreme court decisions interpreting section 29.68 of the statutes if the decision is more restrictive than or inconsistent with the provisions of this act." 1983 Wis. Act 418, § 1. Our application of *LePoidevin v. Wilson*, 111 Wis. 2d 116, 330 N.W.2d 555 (1983), however, is limited only to the extent that its facts are illustrative of the legislature's intent on what factual situations are to be included under the social guest exception.

recreational activity if any of the following conditions exist:

(a) The private property owner collects money, goods or services in payment for the use of the owner's property for the recreational activity during which the death or injury occurs, and the aggregate value of all payments received by the owner for the use of the owner's property for recreational activities during the year in which the death or injury occurs exceeds $2,000.

Wis. Stat. § 895.52(6)(a). Under this section, a landowner is not immune if two conditions exist. "First, the owner collects money, goods or services in payment for the use of the owner's property for the recreational activity during which the injury occurs." *Douglas v. Dewey*, 154 Wis. 2d 451, 458, 453 N.W.2d 500 (Ct. App. 1990). "Second, the aggregate value of all payments received by the owner for the use of his or her property for recreational activities during the year in which the injury occurs exceeds [$2,000]." *Id.* at 458–59.

¶ 37. In *Douglas*, the court of appeals recognized that the legislature specifically adopted a pecuniary-benefit approach, which places duties and obligations upon owners of property when the owners receive a pecuniary benefit from users of their property. *Id.* at 461. The court also noted that the legislature's intent to adopt this approach was indicated in 1983 Wis. Act 418, which stated that the act intended to limit the liability of property owners " 'under circumstances in which the owner does not derive more than a minimal pecuniary benefit.' " *Id.* (quoting 1983 Wis. Act 418, § 1). These benefits must be actual, not merely potential. *Id.* All indirect pecuniary benefits, as well as direct pecuniary benefits, received by the property owner for the use of the property must be considered. *Id.* at 462.

¶ 38.   The plaintiffs argue that this exception applies to eliminate recreational immunity for David because Paul's overall pecuniary benefit was over $2,000. This pecuniary gain came from the sale of the boat. Urban purchased the boat for $4,000. The plaintiffs assert that Urban's use of the slip was part of the consideration in the sale of the boat. The plaintiffs further contend that, because Paul would be denied immunity in this respect, David should similarly be denied immunity. However, in this case, this exception does not apply.

¶ 39.   The record does not provide any evidence to show that Paul's permission to use the boat slip helped to secure the sale of the boat or had any effect on the overall cost of the boat. Indeed, Urban suggested that the cost of the slip was included in the boat sale, but he also stated that Paul told him "no problem" and did not charge him directly for the use of the slip. Regardless, even if Paul had received such a benefit in the sale of his boat, the benefit gained for the use of the boat slip would have been only a minimal pecuniary gain. Further, there are no facts in the record to suggest that David received any benefit. David is entitled to immunity.

¶ 40.   In summary, we conclude that the facts of this case give rise to recreational immunity for David. The circuit court properly granted summary judgment to the defendants.

*By the Court.*—The judgment of the circuit court is affirmed.

¶ 41.   JON P. WILCOX, J. *(concurring).* I agree with the majority's conclusion that Wis. Stat. § 895.52

(1995–96)[1] confers immunity upon David Grasser. However, for the reasons expressed in my dissent to *Minnesota Fire & Cas. Ins. Co. v. Paper Recycling of LaCrosse*, 2001 WI 64, 244 Wis. 2d 290, 627 N.W.2d 527, I do not join the majority's conclusion that courts examining whether a particular activity falls within the scope of § 895.52 must consider the nature of the property on which the activity occurs and the subjective intent of the property owner to open his or her property to recreational activity. *See* majority op. at ¶ 13.

¶ 42.   Section 895.52 is plain on its face. It provides that "no owner and no officer, employe or agent of an owner is liable for the death of, any injury to, or any death or injury caused by, a person engaging in a recreational activity on the owner's property." Wis. Stat. § 895.52(2)(b). This broad grant of immunity applies to all "real property and buildings, structures and improvements thereon."[2] Wis. Stat. § 895.52(1)(f). Nothing in the statute further qualifies the type of property to which § 895.52 immunity attaches.

¶ 43.   Until recently, this court recognized as much:

> The unambiguous language of the recreational use statute sets the following precondition for immunity—that the injury be to or caused by "a person engaging in a recreational activity on the owner's property. . . ." Wis. Stat. § 895.52(2)(b). There is no language [in § 895.52] that conditions immunity upon affirmative acts on the part of the owner to grant permission or otherwise "open" land.

---

[1] All subsequent references to the Wisconsin Statutes are to the 1995–96 version unless otherwise indicated.

[2] Section 895.52 also applies to "the waters of the state, as defined under s.144.01(18)." Wis. Stat. § 895.52(1)(f).

The legislature has made it clear that previous decisions by Wisconsin courts that are more restrictive, implying a requirement that lands be "open," are overruled.

*Verdoljak v. Mosinee Paper Corp.*, 200 Wis. 2d 624, 634–35, 547 N.W.2d 602 (1996). Therefore, this court traditionally has held that § 895.52 conditions immunity upon the nature of the property user's activity, not on the nature or "openness" of the property. *Id.* at 631; *Sievert v. American Family Mut. Ins. Co.*, 190 Wis. 2d 623, 632, 528 N.W.2d 413 (1995).

¶ 44.  Nonetheless, the majority posits that the scope of § 895.52 recreational immunity is unclear and is guided by a "seeming lack of basic underlying principles." Majority op. at ¶ 12. This conclusion, in itself, is rather curious in light of the fact that the legislature distinctly explained the basic principles underlying § 895.52: "The legislature intends by [§ 895.52] to limit the liability of property owners toward others who use their property for recreational activities. . . . [T]his legislation should be liberally construed in favor of property owners to protect them from liability." 1983 Wis. Act 418 (act creating § 895.52). But the majority believes that its professed confusion regarding the principles underlying § 895.52 permits it to inject its view of what the law should say. Consequently, it acknowledges two recent court-created limits on the type of property to which § 895.52 applies and, in doing so, shifts the statutory precondition for recreational immunity from the nature of the property user's activity to the nature of the property on which the activity occurs.

¶ 45.  To be sure, the majority frames these limits as a list of factors courts must consider in examining the nature of an activity, rather than as restrictions on

the type of property to which § 895.52 applies. Regardless of how the majority spins this issue, however, the result is the same: Courts may withhold recreational immunity from property owners who own what the courts deem to be "non-recreational property." Thus, the type of property to which § 895.52 immunity attaches is no longer defined by § 895.52, but instead, by the courts.

¶ 46.   As I explained in my dissent to *Minnesota Fire*, I will not join the majority in ignoring the clear legislative directive in § 895.52. Accordingly, while I concur in the majority's disposition of the case at hand, I do not join the majority in recognizing the new judicially-legislated limits on the types of property to which § 895.52 immunity extends.

¶ 47.   SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(dissenting)*. Today's decision extends immunity for recreational activity on one owner's property to the owner of adjacent property that the injured plaintiff walked across in order to get to his automobile after leaving the land upon which he engaged in recreational activity. Because I conclude that this extension of immunity is not justified under Wis. Stat. § 895.52, I dissent.

¶ 48.   The facts of this case show that the plaintiff, Donald Urban, was injured while walking on the property of defendant David Grasser. The plaintiff walked across David Grasser's land to get back to the plaintiff's automobile after having worked on his boat. The plaintiff's boat activities, which occurred on property owned by Paul Grasser, are "recreational activities" on Paul Grasser's land within Wis. Stat. § 895.52(1)(g) and (2)(b).

¶ 49. Under the plain language of Wis. Stat. § 895.52(2)(b), "no owner is liable for. . .any injury to. . .a person engaging in a recreational activity on the owner's property." Paul Grasser is immune from liability under the statute for injury to the plaintiff, who engaged in a recreational activity on Paul Grasser's property. Paul Grasser may also arguably be immune from liability under the statute for injury to the plaintiff for any recreational activity in which the plaintiff engaged on Paul Grasser's easement.

¶ 50. The statute does not, however, extend recreational immunity to David Grasser, the owner of the servient estate, the property subject to the easement.[1] The statute grants an owner immunity from liability only for an injury to "a person engaging in a recreational activity *on the owner's property*." Wis. Stat. § 895.52(2)(b) (emphasis added). The plaintiff was not injured while engaging in a recreational activity on David Grasser's property. The majority opinion implicitly agrees with this position and therefore rewrites Wis. Stat. § 895.52(2)(b).

¶ 51. The majority opinion has rewritten Wis. Stat. § 895.52(2)(b), apparently adding the words shown in boldface to grant an owner of property immunity from liability for an injury to "a person engaging in a recreational activity on the owner's property **and to a person engaging in a recreational activity on another person's property when the activity on the owner's property is inextricably connected to**

---

[1] The existence of an access easement between David and Paul Grasser provides no support for the majority opinion's conclusion that the two men share recreational immunity. The majority opinion cites no authority to support the idea that statutory immunity from tort liability of the owner of a dominant estate is shared by the owner of the servient estate.

697

the recreational activity on the other person's property."

¶ 52. Applying the statute as rewritten, the majority opinion concludes that David Grasser is entitled to share Paul Grasser's recreational immunity because the plaintiff's walking on David Grasser's property is "inextricably connected" to the recreational activity of boating that had occurred on Paul Grasser's property. This nebulous concept of "inextricably connected" that extends recreational immunity to a second property owner as a result of a recreational activity that occurs on adjacent property has no basis in the recreational immunity statute.

¶ 53. In reading the statute the way it does, the majority opinion suggests that it is fulfilling the purpose of the statute to encourage property owners to open their property for recreational activity.[2] I disagree.

¶ 54. First, whether the purpose of the recreation immunity statute is to open land for recreation is open to question. The "opening the land" purpose is no longer expressed in the statute. The 1983 amendments to the recreational immunity statute apply to the present case and contain no references to opening the land or giving or granting permission to enter the land as had earlier statutes. The purpose of the 1983 statute was to limit the liability of property owners toward others who use the property for recreational activities. The 1983 amended statute does not purport to grant

---

[2] *See* majority op. at ¶ 12.

*See also Minnesota Fire & Cas. Ins. Co. v. Paper Recycling Co.*, 2001 WI 64, ¶¶ 60–61, 244 Wis. 2d 290, 627 N.W.2d 527 (Wilcox, J., dissenting).

immunity only to those owners who open their land for recreational activity.[3]

¶ 55.  One of the purposes of the 1983 amendments as evidenced in the legislative history was to do away with the great uncertainty in the recreational immunity law produced in this court's decisions.[4] Yet the majority opinion creates new uncertainty. Requiring an intensely fact-driven inquiry into whether a plaintiff's presence on one property is "inextricably connected" to recreational activity on a second property creates uncertainty.

¶ 56.  This sort of intensive fact-driven inquiry fundamentally changes the "open the land" purpose of the recreational immunity statute that the majority opinion is striving to achieve: If property owners' immunity from suit depends on a court's fact-driven inquiry rather than on the plain language of the statute, property owners have less incentive to open their property for recreational activities. I do not think the legislature intended that Wis. Stat. § 895.52 operate as such an unpredictable tool for defendants in personal injury cases.

¶ 57.  The new and nebulous judicially created concept of "inextricably connected" threatens to extend recreational immunity far beyond the plain language of the statute. For example, the plaintiff in this case was walking across David Grasser's property to get his automobile, which was parked on the street. Is the

---

[3] *Verdoljak v. Mosinee Paper Corp.*, 200 Wis. 2d 624, 632–33, 635, 547 N.W.2d 602 (1996).

*See also Minnesota Fire & Cas. Ins. Co. v. Paper Recycling Co.*, 2001 WI 64, ¶¶ 60–61, 244 Wis. 2d 290, 627N.W.2d 527 (Wilcox, J., dissenting).

[4] *See Minnesota Fire*, 2001 WI 64, ¶ 61 n.7 (Wilcox, J., dissenting).

street or parking area on which the plaintiff parked his automobile, an activity that was necessary to get to the boat, also inextricably connected to the recreational activity that occurred on the property of a different owner? Is the owner of the street or the parking area entitled to recreational immunity for an injury that occurred while the plaintiff was going to or from his car? What if the plaintiff parked a mile away and had to walk over several different properties to reach his boat: would each property owner along the journey be entitled to recreational immunity under the majority opinion's theory of an inextricable connection? What about an injury that occurred at some point in the plaintiff's drive from home? The majority opinion provides no sense of how distant in time or space the nonrecreational activity must be in order to extricate it from its connection to the recreational activity. As a result, the potential applications of this new theory of recreational immunity seem boundless.

¶ 58. Because I see no logical stopping point for the majority's new theory, and because I do not think the legislature intended that the statute would provide such broad immunity for defendants in personal injury cases, I conclude that this case represents the stopping point for recreational immunity.

¶ 59. David Grasser is not the owner of property on which a recreational activity occurred. Accordingly, under the plain language of Wis. Stat. § 895.52(2)(b), David Grasser is not immune from liability for injury to the plaintiff, who was engaged in a recreational activity on another's property.

¶ 60. This court should await clear guidance from the legislature before extending recreational immunity to adjacent property owners whose property the injured person walks across en route to or from a

recreational activity on another's land. The nebulous concept of "inextricably connected to recreational activity" cannot be applied with any precision and expands recreational immunity far beyond the plain language of Wis. Stat. § 895.52.

¶ 61.  Finally, I join the chorus of voices on this court expressing frustration with trying to apply the current version of the recreational immunity statute clearly and consistently in the myriad fact situations that have arisen.[5] More cases are in the pipeline. I join the chorus requesting clarification from the legislature regarding the intended scope and application of the

---

[5] Another issue is the disparity in language between Wis. Stat. § 895.52(2)(b), which grants an owner of property immunity under certain circumstances, and Wis. Stat. § 895.52(6)(d), which restores liability for social guests.

Section 895.52(2)(b) grants immunity for any "injury to. . .a person engaging in recreational activity on the owner's property." In contrast, Wis. Stat. § 895.52(6)(d) creates a social guest exception. Subsection (6)(d) states that the liability of an owner (other than a government body or nonprofit organization) whose property is used for recreational activity is not limited under Wis. Stat. § 895.52(2) when the "injury occurs on property owned by a private property owner to a social guest."

Thus, for recreational immunity, apparently an owner need only show that the injured person engaged in recreational activity on the owner's property. It is arguable that whether the injury occurred on the owner's property is irrelevant. If the injured person seeks to hold the owner liable under the social guest exception to recreational immunity, the statute might be interpreted to require that the injury occurred on the owner's property. *See Waters v. Pertzborn*, 2001 WI 62, ¶ 50, 243 Wis. 2d 703, 627 N.W.2d 497.

recreational immunity statute.[6] I suggest the legislature might wish to reexamine the statute. *See* Wis. Stat. §§ 13.83(1)(c)1 and 13.93(2)(d) (1999–2000).

¶ 62.   For the reasons set forth, I dissent.

¶ 63.   I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

---

[6] *See* majority op. at ¶ 12. *See also Minnesota Fire*, 2001 WI 64, ¶¶ 37–44 (Bradley, J., concurring); *id.* at ¶ 72 (Wilcox, J., dissenting).