MINNESOTA FIRE & CASUALTY INSURANCE COMPANY, a
Minnesota corporation, Plaintiff-Respondent,

v.

PAPER RECYCLING OF LA CROSSE, a Wisconsin corpora-
tion and General Casualty Company, a Wisconsin
corporation, Defendants-Appellants-Petitioners.

Joyce A. DEVENPORT, Individually and as Personal
Representative of the Estate of Daniel Raymond
Devenport, Deceased, Plaintiff-Appellant,

v.

PAPER RECYCLING COMPANY, and Regent Insurance
Company, Defendants-Respondents-Petitioners.

Supreme Court

*Nos. 99–0327, 99–0858. Oral argument December 4,
2000.—Decided June 14, 2001.*

## 2001 WI 64

(Also reported in 627 N.W.2d 527.)

For defendants-appellants-petitioners, Paper Recycling of La Crosse and General Casualty Company, and for defendants-respondents-petitioners, Paper Recycling Company and Regent Insurance Company, there were briefs by *James G. Curtis* and *Hale,*

*Skemp, Hanson, Skemp & Sleik*, La Crosse, and oral argument by *James G. Curtis*.

For plaintiff-appellant, Joyce A. Devenport, there was a brief by *Dean R. Rohde* and *Bye, Goff & Rohde, Ltd.*, River Falls, and oral argument by *Dean R. Rohde*.

For plaintiff-respondent, Minnesota Fire & Casualty Insurance Company, there was a brief by *Tony R. Krall, John F. Cook* and *Hanson, Lulic & Krall*, Minneapolis, Minnesota, and oral argument by *John F. Cook*.

¶ 1. N. PATRICK CROOKS, J. The petitioner, Paper Recycling of La Crosse, Inc. (Paper Recycling), seeks review of an unpublished court of appeals decision. Two La Crosse County Circuit Court cases were consolidated for appeal purposes because the cases resulted from the same fact situation and presented the same issue. In the first case, the circuit court, Judge Dennis G. Montabon presiding, held that Paper Recycling was not entitled to recreational immunity under Wis. Stat. § 895.52(2) in a lawsuit stemming from a 1997 fire at Paper Recycling's property that resulted in the death of a young boy. In denying the motion for summary judgment, the circuit court concluded that Paper Recycling was not entitled to recreational immunity because Daniel Devenport and the boys he was with were not engaged in a recreational activity as defined by Wis. Stat. § 895.52(1)(g).

¶ 2. In the second case, the circuit court, Judge Michael J. Mulroy presiding, held that Paper Recycling was entitled to recreational immunity because Devenport and his friends were engaged in a recreational activity. The circuit court, therefore, granted Paper Recycling's motion for summary judgment. The court of appeals affirmed Judge Montabon's decision

and reversed Judge Mulroy's decision, holding that Paper Recycling was not entitled to recreational immunity because the boys were not engaged in a recreational activity.

¶ 3. We hold that the boys, who were crawling through stacks of baled paper, lighting matches and starting fires, were not engaged in a recreational activity as defined by Wis. Stat. § 895.52(1)(g), and therefore, Paper Recycling was not entitled to recreational immunity under Wis. Stat. § 895.52(2). We, thus, affirm the court of appeals.

I

¶ 4. On May 28, 1997, eleven-year-old Daniel Devenport (Devenport) was killed in a fire on commercial property leased to Paper Recycling. Paper Recycling, while operating a recycling facility on this property, stored stacks of baled paper in the outdoor yard of the property. The property, which was protected by a fence, was not open to the public. Devenport and two of his friends, who were also eleven-year-olds, entered Paper Recycling's property through an opening in the fence. Once inside the outdoor yard of Paper Recycling's property, Devenport and his friends began crawling around through spaces inside the stacks of baled paper that they imagined were tunnels. Within the interior of the stacks were large spaces that the boys imagined were rooms or forts to play in. One of the boys brought a box of matches that all three boys used to start fires inside the stacks. While inside one of the interior spaces, the boys noticed a fire in the space they had used to enter the stacks. Devenport's friends escaped the fire through a small opening in the stacks. Devenport was unable to escape and was killed in the fire.

¶ 5. Two lawsuits followed the fire and Devenport's death. In case number 99–0327, Minnesota Fire and Casualty Insurance Company sued Paper Recycling in a subrogation action to recover damages it paid to its insured, Royal Properties, who leased the property to Paper Recycling. Paper Recycling moved for summary judgment claiming recreational immunity under Wis. Stat. § 895.52(2) because the boys were engaged in a recreational activity. The circuit court denied Paper Recycling's motion, holding that Devenport and his friends were not engaged in a recreational activity as defined by Wis. Stat. § 895.52(1)(g). The circuit court determined that the activity that the boys were engaged in was neither specifically listed in the recreational immunity statute, nor substantially similar to the activities listed in the statute, nor undertaken in circumstances substantially similar to the circumstances of a recreational activity.

¶ 6. In case number 99–0858, Devenport's mother, Joyce Devenport, sued Paper Recycling in a wrongful death action. Paper Recycling moved for summary judgment, again claiming recreational immunity because Devenport and his friends were engaged in a recreational activity. The circuit court granted Paper Recycling's motion, holding that the boys were engaged in a recreational activity as defined by Wis. Stat. § 895.52(1)(g). The circuit court held that they were engaged in a recreational activity because one of them stated in an affidavit that the boys' purpose in entering Paper Recycling's property was to play in the stacks of baled paper.

¶ 7. The Wisconsin Court of Appeals, District IV, consolidated the two cases for appeal. The court of appeals affirmed the circuit court in case number 99–0327 and reversed the circuit court in case number

99–0858, holding that Paper Recycling was not entitled to recreational immunity under Wis. Stat. § 895.52(2), because Devenport and his friends were not engaged in a recreational activity as defined by Wis. Stat. § 895.52(1)(g). The court of appeals determined that the activity that the boys were engaged in was not substantially similar to any of the activities listed in the recreational immunity statute.

## II

¶ 8. The consolidated case requires us to determine whether Paper Recycling is entitled to summary judgment. We review a circuit court's decision to grant or deny a motion for summary judgment "by applying the standards set forth in sec. 802.08(2), Stats., in the same manner as the circuit court." *Shannon v. Shannon*, 150 Wis. 2d 434, 441, 442 N.W.2d 25 (1989). A court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2) (1995–1996).[1]

¶ 9. The issue presented by the instant case is whether Paper Recycling is entitled to recreational immunity in both lawsuits under Wis. Stat. § 895.52(2).[2] To resolve this issue, we must apply the recreational immunity statute to the specific facts of

[1] All subsequent references to the Wisconsin Statutes are to the 1995–96 version unless otherwise indicated.

[2] The recreational immunity statute provides in pertinent part:

the present case. The application of the recreational immunity statute to specific facts presents a question of law that we review de novo, while benefiting from the analyses of the circuit court and the court of appeals. *Sievert v. American Family Mut. Ins. Co.*, 190 Wis. 2d 623, 628, 528 N.W.2d 413 (1995).

¶ 10. To determine whether Paper Recycling is entitled to recreational immunity in the two lawsuits, we must first determine whether the boys involved were engaged in a recreational activity. *Sievert*, 190 Wis. 2d at 628. The recreational immunity statute provides the following definition of recreational activity:

> "Recreational activity" means any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure, including practice or instruction in any such activity. "Recreational activity" includes, but ·is not limited to, hunting, fishing, trapping, camping, picnicking, exploring caves, nature study, bicycling, horseback riding, bird-watching, motorcycling, operating an all-terrain vehicle, ballooning, hang gliding, hiking, tobogganing, sledding, sleigh riding, snowmobiling, skiing, skating, water sports,

(2) No duty; immunity from liability. (a). . .no owner and no officer, employe or agent of an owner owes to any person who enters the owner's property to engage in a recreational activity:

1. A duty to keep the property safe for recreational activities.
2. A duty to inspect the property . . .
3. A duty to give warning of an unsafe condition, use or activity on the property.

(b) . . .no owner and no officer, employe or agent of an owner is liable for the death of, any injury to, or any death or injury caused by, a person engaging in a recreational activity on the owner's property or for any death or injury resulting from an attack by a wild animal.

Wis. Stat. § 895.52.

sight-seeing, rock-climbing, cutting or removing wood, climbing observation towers, animal training, harvesting the products of nature, and any other outdoor sport, game or educational activity, but does not include any organized team sport activity sponsored by the owner of the property on which the activity takes place.

Wis. Stat. § 895.52(1)(g). In *Sievert*, we determined that this definition of recreational activity is divided into three parts:

(1) a broad definition stating that a recreational activity is "any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure," (2) a list of 28 specific activities denominated as recreational, and (3) a second broad definition, directing that a recreational activity can be "any other outdoor sport, game or educational activity."

190 Wis. 2d at 629. The first part's broad definition, providing that a recreational activity is "any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure," could be interpreted to include almost any outdoor activity. *Id.* Because every outdoor activity is not a recreational activity, we must construe the first part's broad definition in light of the second part's list of 28 specific recreational activities, and the third part's broad definition providing that a recreational activity is "any other outdoor sport, game or educational activity." *Id.* We must therefore determine if the activity that Devenport and the other two boys were engaged in satisfies the statutory definition of recreational activity.

¶ 11. Joyce Devenport and Minnesota Fire & Casualty Insurance Company (Minnesota Fire) contend that the boys were not engaged in a recreational

activity. Both argue that the activity that the boys were engaged in does not satisfy the statutory definition of recreational immunity. In addition, both argue that the boys' activity fails the test for recreational activity set forth in *Linville v. City of Janesville*, 184 Wis. 2d 705, 516 N.W.2d 427 (1994). Both claim that the boys' activity fails the *Linville* test because the activity is neither substantially similar to the activities listed in the statute nor undertaken in circumstances substantially similar to the circumstances of a recreational activity.

¶ 12. Joyce Devenport and Minnesota Fire also suggest that the boys' activity was not a recreational activity because it was not a traditional form of child's play. They compare the boys' activity to the random wanderings of a three-year-old child near a lakeshore, an activity held not to be a recreational activity in *Shannon*. 150 Wis. 2d at 448. Both claim that the boys' activity is like the activity in *Shannon* because both are activities in which children fail to understand the danger involved. Lastly, both argue that concluding that the boys were not engaged in a recreational activity is consistent with the purpose of the recreational immunity statute. According to both, the purpose of the recreational immunity statute is to encourage property owners to open their property for recreational activities, not to reward property owners for failing to prevent children from being drawn onto the dangerous conditions of commercial property.

¶ 13. Paper Recycling contends that the activity that Devenport and his friends were engaged in was a recreational activity. Paper Recycling argues that this activity satisfies the first part of the statutory definition for recreational immunity as "any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure." Paper Recycling also argues that this activ-

301

ity satisfies the third part of the statutory definition for recreational activity as "any other outdoor sport or game." In the alternative, Paper Recycling argues that this activity satisfies the *Linville* test as substantially similar to the activities listed in Wis. Stat. § 895.52(1)(g).

¶ 14. Paper Recycling argues that the activity that the boys were engaged in was an "outdoor activity undertaken for the purpose of exercise, relaxation or pleasure." To support this argument, Paper Recycling relies on *Kruschke v. City of New Richmond*, 157 Wis. 2d 167, 458 N.W.2d 832 (Ct. App. 1990). In *Kruschke*, the court of appeals held that playing on a swing in a city park is a recreational activity. 157 Wis. 2d at 168. The court of appeals stated that its decision was consistent with the broad definition that had been given to the phrase recreational activity in previous Wisconsin cases. *Id.* at 172.

¶ 15. Paper Recycling also argues that the boys were playing a game that can be classified as "any other outdoor sport or game" under the third part of the statutory definition. To support this argument, Paper Recycling relies on *Taylor v. City of Appleton*, 147 Wis. 2d 644, 433 N.W.2d 293 (Ct. App. 1988). In *Taylor*, the court of appeals held that Taylor's activity of "playing catch with a football in a city park" was an "outdoor sport or game" that satisfies the third part's broad definition of recreational activity. 147 Wis. 2d at 646. Even though the court of appeals recognized that playing catch with a football "is of a different character from many of the activities listed in sec. 895.52(1)(g)," the court concluded that it is still a recreational activity. *Id.* at 647. Following the legislative intent for liberal construction of the statute, the court of appeals concluded that playing catch with a football in a city park

was an "outdoor sport or game." Paper Recycling argues that Devenport and his friends, like Taylor, were engaged in an "outdoor sport or game."

¶ 16. Paper Recycling further contends that the activity that the boys were engaged in satisfies the *Linville* test as substantially similar to the specific activities listed in the recreational immunity statute. For example, Paper Recycling suggests that Devenport and his friends imagined that they were playing in tunnels and forts, an activity substantially similar to the specific activity listed in the statute of exploring caves. In addition, Paper Recycling argues that Devenport and his friends had the intent to recreate by playing outdoor games after school and that this intent, combined with the objective nature of the activity, establishes that the boys were engaged in a recreational activity.

¶ 17. Lastly, Paper Recycling argues that the recreational immunity statute provides blanket immunity and that any limitation of that immunity would hinder the purpose of the statute. To support this argument, Paper Recycling relies on *Verdoljak v. Mosinee Paper Corp.*, 200 Wis. 2d 624, 547 N.W.2d 602 (1996). In *Verdoljak*, we held that the recreational immunity statute protected Mosinee Paper Corporation (Mosinee) from a lawsuit filed by a motorcyclist who was injured on its property, despite the fact that Mosinee opened its property for hunting and fishing, but not for motorcycling. 200 Wis. 2d at 631. In that case, we recognized that limiting the applicability of the recreational immunity statute to property owners who open their property for all recreational activities would defeat the statute's purpose of encouraging property owners to open their lands for recreational

303

activities, even if the owner only opens the land for one activity. *Id.* at 635.

¶ 18. The activity that the boys were engaged in, crawling through stacks of baled paper, while lighting matches and starting fires, is not included in the second part of the immunity statute's definition which lists 28 specific recreational activities. Nor is the activity of the boys included, specifically, in the third part's broad definition providing that a recreational activity is "outdoor sport, game or educational activity."

¶ 19. It is argued that we should construe the first part of the statutory definition providing that a recreational activity is "any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure" to include the boys' activity. This activity was an outdoor activity and one of the boys stated that the purpose of the activity was to play. However, every outdoor activity for the stated purpose of exercise, relaxation or pleasure could be included within this definition. *Sievert,* 190 Wis. 2d at 629. Because every outdoor activity is not a recreational activity, we must construe the first broad part of the definition in light of the second part's 28 specific activities and the third part's broad definition. *Id.*

¶ 20. As noted, our analysis does not end because the activity the boys were engaged in is not specifically listed in Wis. Stat. § 895.52(1)(g). *Sievert,* 190 Wis. 2d at 629–30. The legislature has stated that § 895.52(1)(g) only provides examples of recreational activities. *Id.* at 630. Consequently, the legislature has provided guidance for construing the statute. In 1983 Wis. Act 418, § 1, the legislature stated its intent behind the recreational immunity statute:

The legislature intends by this act to limit the liability of property owners toward others who use their property for recreational activities under circumstances in which the owner does not derive more than a minimal pecuniary benefit. While it is not possible to specify in a statute every activity which might constitute a recreational activity, this act provides examples of the kinds of activities that are meant to be included, and the legislature intends that, where substantially similar circumstances or activities exist, this legislation should be liberally construed in favor of property owners to protect them from liability. The act is intended to overrule any previous Wisconsin supreme court decisions interpreting section 29.68[3] of the statutes if the decision is more restrictive than or inconsistent with the provisions of this act.

Accordingly, we will liberally construe the recreational immunity statute in favor of property owners when the activity in question is not specifically listed but "is substantially similar to the activities listed in the statute or whe[n] [the] activity is undertaken in circumstances substantially similar to the circumstances of a recreational activity." *Sievert*, 190 Wis. 2d at 631.

¶ 21. We must therefore determine whether the activity that the boys were engaged in was "substantially similar to the activities listed in the statute or whether [the activity was] undertaken in circumstances substantially similar to the circumstances of a recreational activity." *Id.* at 631. In *Linville*, the court of appeals applied the following test that this court has adopted in making that determination:

---

[3] The legislature repealed Wis. Stat. § 29.68, the predecessor to Wis. Stat. § 895.52, by 1983 Wis. Act 418 § 2 effective May 15, 1984.

The test requires examination of all aspects of the activity. The intrinsic nature, purpose and consequence of the activity are relevant. While the injured person's subjective assessment of the activity is relevant, it is not controlling. Thus, whether the injured person intended to recreate is not dispositive, but why he was on the property is pertinent.

184 Wis. 2d 705, 716, 516 N.W.2d 427 (1994)(citing *Linville v. City of Janesville*, 174 Wis. 2d 571, 579–80, 497 N.W.2d 465 (Ct. App. 1993)). The *Linville* test is an objective test. 184 Wis. 2d at 713. This test requires a court to apply a reasonable person standard to determine whether a property user's activity is recreational based on the totality of the circumstances surrounding the activity.

¶ 22. We begin the analysis, in regard to the application of the *Linville* test, with the intrinsic nature of the activity. Nature is defined as "[t]he essential characteristics and qualities of a person or thing." *The American Heritage Dictionary* 1204 (3d ed. 1992). The essential characteristic of the boys' activity was involvement in mischievous conduct. The boys were inside the stacks of baled paper, lighting matches and starting fires. According to a statement taken in an interview with one of the surviving boys, Devenport, at the time that a fire was discovered, was "sitting in the corner in one of the rooms" within the baled paper.[4] The determination that the boys were engaged in mis-

---

[4] It should be noted that the boys' activity was characterized as "play" in their affidavits. However, the interview with one of the surviving boys, the only evidence in the record in the boys' own words, did not state that they were playing. Nonetheless, a subjective assessment, while relevant, is not determinative of the result in the present case.

chievous conduct is further evidenced by the fact that the boys stated in their affidavits that they waited to begin their activity until no one was around. This fact suggests that the boys wished to conceal their activity, a fact not usually associated with a recreational activity.

¶ 23. Before we analyze the purpose and consequence of the activity, the examination of the intrinsic nature of the activity also requires consideration of the nature of the property upon which the activity takes place. *Linville*, 184 Wis. 2d at 717. The nature of the property can be an important part of the determination of whether the activity is recreational.[5] For example, in *Linville* the nature of the property was a significant factor in the determination that the activity in question was recreational. *Id.* Kelly Linville and her son David were taken to a pond in a van driven by Walter Hadden to look at potential fishing spots. *Id.* at 711–12. The City of Janesville owned the pond, which was used for recreational purposes. *Id.* at 712. When the van became stuck in the mud, Kelly Linville got out and tried to push it out. *Id.* She was unable to move the van and it sank in the mud, drowning David Linville and

---

[5] The dissent suggests that the legislature has removed the nature of the property from the analysis of whether an activity is recreational, citing *Verdoljak v. Mosinee Paper Corp.*, 200 Wis. 2d 624, 631, 633–34, 547 N.W.2d 602 (1996). Dissent at ¶ 61. The legislature, in enacting Wis. Stat. § 895.52, removed references to a property owner opening his or her land for recreational activities in order to receive recreational immunity. *Verdoljak*, 200 Wis. 2d at 631. However, there is nothing that could be found in the legislative history of § 895.52 indicating that the nature of the property on which the activity takes place should be excluded from the determination of whether an activity falls within the ambit of recreational immunity.

Walter Hadden. *Id.* We concluded that the Linvilles were engaged in a recreational activity. *Id.* at 717. To reach this conclusion we relied on the fact that fishing is an activity listed in the statutory definition of recreational activity and that the intrinsic nature of fishing is recreational. *Id.* In addition, we relied on the nature of the property upon which the activity took place. *Id.* We stated that "[t]he facts crucial to our determination are that [Kelly Linville] was at a recreational facility which is open for public use, looking at potential fishing areas in the Pond." *Id.* The fact that the Linvilles were at a recreational facility open for public use was inextricable from the fact that they were looking at potential fishing spots.

██

¶ 24. While the nature of the property can be a significant factor in the determination of whether an activity is recreational, it is not dispositive. *Sievert*, 190 Wis. 2d at 623. In *Sievert*, we determined that the activity of walking onto a boat dock to greet a neighbor was not a recreational activity. *Id.* at 633. We made this determination based on the intrinsic nature and purpose of the activity. *Id.* The fact that the activity took place on property used for recreational purposes, a boat dock, did not change the non-recreational activity of greeting a neighbor into a recreational activity.[6] *Id.* at 632.

---

[6] The dissent contends that the determination of whether an activity is recreational focuses on the nature of the activity, not the nature of the property, citing *Sievert v. American Family Mut. Ins. Co.*, 190 Wis. 2d 623, 632, 528 N.W.2d 413 (1995). Dissent at ¶ 61. We also stated in *Sievert* that "[t]he *Linville* test does not rely exclusively on the characteristics of the property on which the activity is undertaken to determine whether an activity is recreational under the statute." 190 Wis. 2d at 632.

¶ 25. In the present case, there is nothing in the intrinsic nature of the boys' activity that was substantially similar to a recreational activity. As stated above, the nature of the boys' activity was that they were engaged in mischievous conduct while no one was around. As was the case in *Linville*, the nature of Paper Recycling's property is crucial to our examination of the nature of the boys' activity. 184 Wis. 2d at 717.[7] The nature of the property was a commercial site used for a business purpose. In addition, the property was not open to the public for recreational use. While we recognize that intent is not dispositive (*see Linville*, 184 Wis. 2d at 717), there is nothing in the record to indicate that Paper Recycling intended that its property would be a recreational property or would be used for recreational activities. In fact, the record indicates that Paper Recycling intended that its property would be used only for commercial activities, evidenced by the fence Paper Recycling erected around its property to keep people away from the commercial materials, such as the paper bales, stored in the outside yard.

The fact that we do not focus on or rely exclusively on the nature of the property does not mean that we exclude the nature of the property from the analysis.

[7] The dissent also states that we have relied on one line in *Linville v. City of Janesville*, 184 Wis. 2d 705, 717, 516 N.W.2d 427 (1994) to conclude that the nature of the property can be a significant factor in determining whether an activity is recreational. Dissent at ¶ 62. In *Linville*, we stated that "[t]he facts crucial to our determination are that [the person] was at a recreational facility . . . ." 184 Wis. 2d at 717. The use of the word "crucial" clearly indicates that the nature of the property is a significant factor in the determination of whether an activity is recreational.

¶ 26. Paper Recycling leased the property to operate its recycling business. There is nothing in the record to indicate that the property was used for any other purpose than the recycling business. There is nothing in the nature of this activity, engaging in mischievous conduct on commercial property, that is substantially similar to any of the recreational activities listed in the statute. For example, there is nothing in the intrinsic nature of fishing, bicycling or skiing that involves mischievous conduct.

¶ 27. The next step in the analysis is to examine the purpose of the boys' activity. This part of the *Linville* test must also be judged by an objective standard. Purpose is defined as "[t]he object toward which one strives or for which something exists; an aim or a goal." *The American Heritage Dictionary* 1471 (3d ed. 1992). The goal of the boys' activity was to light matches and to start fires. There is nothing in the purpose of this activity, lighting matches in order to start fires, that is substantially similar to any of the recreational activities listed in the statute.

¶ 28. Next in the analysis we look at the consequence of the boys' activity. As was the case with the nature and purpose of the activity, the consequence of the activity must be judged by an objective standard. Consequence is defined as "[s]omething that logically or naturally follows from an action or condition." *The American Heritage Dictionary* 401 (3d ed. 1992). What naturally followed from the boys' activity was that a fire started, destroying Paper Recycling's property and tragically killing Devenport. In fact, it was an almost certain consequence that a fire would start when the

310

boys were lighting matches in stacks of baled paper. There is nothing in this terrible consequence that is substantially similar to any of the recreational activities listed in the statute. While some of the activities listed in the statute may have tragic consequences when someone is killed or injured, none of these activities, such as hang-gliding, skiing or rock-climbing, have unavoidable or almost certain tragic consequences. Thus, the intrinsic nature, purpose and consequence of the boys' activity, judged by an objective standard, all indicate that this activity was not a recreational activity.

¶ 29. The *Linville* test also requires us to consider the boys' subjective assessment of the activity. Devenport and his friends did have the intent to play in the stacks of baled paper. While this subjective intent is relevant to the analysis of whether the activity was recreational, it is not controlling. *Linville*, 184 Wis. 2d at 716. Intent does not change the intrinsic nature, purpose and consequence of the activity. *Id.* at 717. The fact that Devenport and his friends intended to play does not change their non-recreational activity into a recreational one. Consequently, the activity that the boys were engaged in does not satisfy the *Linville* test for a recreational activity.

¶ 30. While we recognize the legislative intent to give a broad definition to the phrase recreational activity, we also recognize that there are limits to this definition. As stated above, not every outdoor activity is a recreational activity. *Sievert*, 190 Wis. 2d at 629. Likewise, not every form of child's play is a recreational activity. Previous Wisconsin cases have concluded that some forms of child's play, like playing on a swing in

311

*Kruschke* or playing catch with a football in *Taylor*, are recreational activities. Because a child's subjective assessment of recreational activity could include every form of child's play, we must use an objective, reasonable adult standard to determine whether a form of child's play is a recreational activity.

¶ 31. By applying an objective, reasonable adult standard, we conclude that the conduct that Devenport and his friends were engaged in, crawling through stacks of baled paper, while lighting matches and starting fires, is not a recreational activity. A reasonable adult would not consider crawling around lighting fires to be a recreational activity. Crawling around lighting fires is not a game, nor is it based on competition, rules or strategy. It is just an inherently dangerous activity that is not objectively a recreational activity.

¶ 32. We are not persuaded that the boys' activity is substantially similar to exploring caves, or any other of the specific activities listed in the recreational immunity statute. The labeling of the activity that the boys were engaged in as exploring caves or playing in tunnels and forts depends solely on the boys' subjective characterization. When we consider the intrinsic nature, purpose and consequence of the activity, as the *Linville* test instructs, we do not find the activity that Devenport and his friends were engaged in to be substantially similar to exploring caves. Stacks of baled paper are not substantially similar to caves. Crawling around while lighting matches and starting fires is not substantially similar to exploring. There is nothing about the intrinsic nature, purpose and consequence of the activity that is substantially similar to any of the activities listed in the statute. While the boys' charac-

312

terization of the activity is relevant under the *Linville* test, it does not control the result.

¶ 33. We therefore conclude that the activity that Devenport and his friends were engaged in was not a recreational activity. This activity does not satisfy the definition of recreational activity set forth in Wis. Stat. § 895.52(1)(g). In addition, this activity was neither substantially similar to the activities listed in the statute nor undertaken in circumstances substantially similar to the circumstances of a recreational activity. Because we conclude that the boys were not engaged in a recreational activity, Paper Recycling is not entitled to recreational immunity.

¶ 34. We also consider the effect of our decision in the present case on the common law doctrine of attractive nuisance. The doctrine of attractive nuisance is a phase of the law of negligence that describes a property owner's liability to a trespassing child. *Christians v. Homestake Enters., Ltd.*, 101 Wis. 2d 25, 28 n.1, 303 N.W.2d 608 (1981). In short, the doctrine of attractive nuisance imposes a duty upon possessors of property "to keep those parts of their land on which they know, or ought to know, children are likely to be present, free from artificial conditions which involve an unreasonable risk of bodily injury or death to children." *Id.* at 30 n.2 (citations omitted).[8] Our decision in the present

---

[8] A plaintiff claiming a cause of action for attractive nuisance must establish the following elements:

(1) . . .that the former [possessor of real estate] maintained, or allowed to exist, upon his land, an artificial condition which was inherently dangerous to children being upon his premises. . . .

(2) . . .that he knew or should have known that children trespassed or were likely to trespass upon his premises. . . .

(3) . . .that he realized or should have realized that the structure erected or the artificial condition maintained by him was

case affects the doctrine of attractive nuisance because the recreational immunity statute provides that a possessor of property has no liability under attractive nuisance to a child using the property for a recreational activity. Wis. Stat. § 895.52(7).

¶ 35. By concluding that Devenport and his friends were not engaged in a recreational activity, we do not eliminate consideration of the doctrine of attractive nuisance under such circumstances. All children would likely characterize the activity of trespassing onto commercial property to play around dangerous, artificial conditions as a recreational activity. If we were to agree, that the subjective play of children on commercial property is a recreational activity, then possessors of commercial property would have no liability towards trespassing children. The inevitable result of that conclusion would be that possessors of commercial property would have no incentive to keep children from being drawn onto their property by dangerous artificial conditions. Consequently, possessors of commercial property would have less reason to monitor their property and prevent children from trespassing.

---

inherently dangerous to children and involved an unreasonable risk of serious bodily injury or death to them . . . .

(4) . . .that the injured child, because of his youth or tender age, did not discover the condition or realize the risk involved in going within the area, or playing in close proximity to the inherently dangerous condition. . . .

(5) . . .that safeguards could reasonably have been provided which would have obviated the inherent danger without materially interfering with the purpose for which the artificial condition was maintained . . . .

*Christians v. Homestake Enters., Ltd.*, 101 Wis. 2d 25, 44, 303 N.W.2d 608 (1981)(citations omitted).

## III

¶ 36. In summary, we hold that Paper Recycling is not entitled to recreational immunity under Wis. Stat. § 895.52(2) in the lawsuits filed by Joyce Devenport and Minnesota Fire and Casualty Insurance Company, because the activity that the boys were engaged in, crawling through stacks of baled paper, while lighting matches and starting fires, was not a recreational activity as defined in Wis. Stat. § 895.52(1)(g). Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 37. ANN WALSH BRADLEY, J. *(concurring).* When interpreting a statute we must discern the intent of the legislature. This rule of statutory construction sounds simple. Yet, the gulf between the statutory language of Wis. Stat. § 895.52 and a reasonable conception of the statute's purpose obfuscates a determination of that intent.

¶ 38. When enacting the recreational immunity statute, did the legislature intend that it apply to an industrial yard? Did the legislature intend that it provide immunity from liability in virtually all cases involving the outdoor activities of children? Because I agree with the majority's answers to these questions, I join the opinion. I write separately to emphasize the lack of a coherent statutory purpose and scheme that frustrates our application of the statute.

¶ 39. The statute as written is difficult to apply. Its laundry list of specific "recreational activities" couched between two sweeping generalizations of what that term means is at the same time all-encompassing

and overly specific. While it is well suited to handle a run-of-the-mill case, such as a softball injury or a camping accident, at the edges of the spectrum are activities that test the definition provided by the statute. In such cases we are required to create new formulations, all the while in the context of a shifting and evasive legislative purpose.

¶ 40. We have maintained that the purpose of the recreational immunity statute is to serve the public policy of encouraging landowners to open their property to recreational use. However, as the dissent correctly notes, the legislature's change in its perception of the statute has effectively divorced this public policy from the application of the statute. As a result of the legislative sea change, the statute serves simply to further the goal of relieving landowners from liability, bar none.

¶ 41. With relief from liability as the only purpose of the statute, what is our guiding light in construing the statute? Where do we draw the lines?

¶ 42. The answer supposedly lies in the amorphous definition of "recreational activity." This case illustrates the deficiencies of such an approach. As we strain to identify the controlling principles, the parties engage in fruitless debate over whether playing in bales of paper is sufficiently analogous to "exploring caves" so as to entitle the defendant to immunity. We could avoid such artificial distinctions if we were able to address the policy of encouraging landowners to open their property to recreational activities. How can that policy be served by providing immunity to the owner of an industrial yard who allegedly has failed to take adequate precautions against the potential for intruding children?

¶ 43. One of the most vexing difficulties the current statute creates is the seemingly universal application of "recreational activity" to the lives of children. With limited exception, all outdoor activities that children engage in during their idle hours might constitute a recreational activity under § 895.52(1)(g). The majority opinion correctly acknowledges this and avoids this harsh result. I do not believe that the legislature intended blanket immunity in cases involving young children. However, absent the majority's construction, the statute would seemingly relieve landowners of any duty to children engaged in an outdoor activity.

¶ 44. Given the difficulties inherent in the statute as currently drafted, I believe it is time that the legislature revisit it. A coherent purpose and scheme are needed to provide guidance, consistency, and reason to our application of the statute. I urge the law revision committee and the revisor of statutes to exercise their statutory duties under Wis. Stat. § 13.83(1) and § 13.93(2)(d) and examine the statute, as it is in need of revision.

¶ 45. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this opinion.

¶ 46. JON P. WILCOX, J. *(dissenting)*. I respectfully dissent. I would conclude that the boys' activity constituted a "recreational activity" under Wis. Stat. § 895.52 (1995–96)[1] and, for this reason, § 895.52 immunizes Paper Recycling from liability. Therefore, I believe that this court should have ruled that summary judgment in favor of Paper Recycling is appropriate.

---

[1] All subsequent references to the Wisconsin Statutes are to the 1995–96 version unless otherwise indicated.

## I

¶ 47. The legislature intended Wis. Stat. § 895.52 to "be liberally construed in favor of property owners to protect them from liability." *Linville v. City of Janesville*, 184 Wis. 2d 705, 715, 516 N.W.2d 427 (1994) (quoting 1983 Wis. Act 418, the act creating § 895.52); *see also Verdoljak v. Mosinee Paper Corp.*, 200 Wis. 2d 624, 638, 547 N.W.2d 602 (1996) (noting legislative intent); *Ervin v. City of Kenosha*, 159 Wis. 2d 464, 476–77, 464 N.W.2d 654 (1991) ("The clear legislative intent was to construe sec. 895.52, Stats., in favor of landowners to protect them from liability."). Accordingly, it worded the statute in broad language: "[N]o owner and no officer, employe or agent of an owner is liable for the death of, any injury to, or any death or injury caused by, a person engaging in a recreational activity on the owner's property. . . ."[2] Wis. Stat. § 895.52(2)(b). Nonetheless, the majority of this court in the present case takes two unprecedented strides around the legislative directive and plain language of § 895.52 and, in doing so, unduly narrows the scope of the statutory term "recreational activity."

## A

¶ 48. First, rather than examining the totality of the circumstances surrounding the boys' activity, the majority focuses its analysis almost entirely upon a single momentary diversion from that activity. This marks a sharp break from precedent.

¶ 49. In *Linville*, this court first set forth its analytical framework for examining whether an activity is a "recreational activity," as defined by § 895.52. In that

---

[2] Section 895.52(1)(d) defines "owner" in part as an owner, lessee, or occupant of property.

case, three persons drove a van to a city-owned pond in order to prepare to go fishing at the pond the next day. 184 Wis. 2d at 711–12. While at the pond, the van became stuck in mud. *Id.* at 712. The persons thus attempted to dislodge the van from the mud. *Id.* However, the van jumped forward into the pond, drowning two of the persons. *Id.*

¶ 50. On review of the subsequent lawsuit against the city, this court explained that the test to determine whether a property user is engaged in a recreational activity "is one which considers the purpose and nature of the activity in addition to the user's intent. . . .*The test requires examination of all aspects of the activity.*" *Id.* at 716 (emphasis added). In light of this test, while examining the facts of the case, we did not focus our analysis on the fact that at the time immediately surrounding the accident, the persons were pushing their van out of mud—an activity probably not within the scope of § 895.52. Rather, we looked to the persons' primary activity: "to look at fishing areas and to prepare for fishing the next day." *Id.* at 717. Because the persons' primary activity—fishing—is a recreational activity under § 895.52, we concluded that § 895.52 conferred immunity upon the city. *Id.*

¶ 51. *Linville* illustrates that recreational activities are defined by the totality of the circumstances surrounding the property user's primary activity. Temporary diversions from the primary activity do not alter the purpose and nature of the activity for purposes of § 895.52 analysis. *Accord Schultz v. Grinnell Mut. Reinsurance Co.*, 229 Wis. 2d 513, 519–20, 600 N.W.2d 243 (Ct. App. 1999) (holding that the momentary diversion of chasing a runaway steer did not change the

recreational activity of attending a fair into "something different").

¶ 52. In the present case the majority abandons the *Linville* analysis. The majority predicates its holding on the fact that at the time immediately surrounding the accident at issue, the boys had lit fires. However, the record indicates that this was not the boys' primary activity.

¶ 53. The only two documents in the record that provide insight regarding the boys' activity on May 28, 1997, are affidavits by Ronald Murray and Andy Barney, the boys who accompanied Daniel Devenport onto Paper Recycling's premises.[3] Ronald Murray's affidavit provides in pertinent part:

> After school on May 28, 1997 I got together with Danny Devenport and Andy Barney and we decided to enter the business premises of Paper Recycling through a hole in the fence around the business.

---

[3] In footnote 4 of the majority opinion, the majority references the transcript of a recorded statement by Andy Barney, which it characterizes as evidence regarding the purpose and nature of the boys' activity. That document states in pertinent part:

[Q] What was Danny Devenport doing before you noticed the fire in the paper bails [sic]?

[A] He was sitting in a corner in one of the rooms.

[Q] How long had he been sitting in one of the rooms before you noticed the fire?

[A] Five minutes.

The majority is correct insofar as it explains that this transcript does not demonstrate that the boys were engaged in a recreational activity. However, this transcript also fails to indicate what the boys had been doing more than five minutes before the fire. That is, it contains no evidence of what the boys' primary activity was.

There were large bales of paper stacked in the yard and we liked to play among the bales of paper. We had found that there were tunnels among the paper bales and we could crawl through the tunnels and reach forts or rooms within the stacks of paper bales where we could play games. Our purpose in entering the premises that day was to play among the bales of paper.

On May 28, 1997 the three of us entered through the hole in the fence. There was no one around and we began playing among the bales of paper. I had with me that day a box of stick matches and all three of us played with the matches among the bales of paper. We all lit matches and lit small fires in the paper.

After a time we proceeded down one of the tunnels in the paper bales and spent some time in a fort or room among the bales. We then noticed that there was fire at the far end of the tunnel in the area where we had previously been lighting the matches.

Andy Barney's affidavit provides substantially the same account:

Prior to May 28, 1997, Danny Devenport, Ron Murray and I would occasionally play at the business premises of Paper Recycling. There were large bales of paper stacked in the yard at Paper Recycling, and we liked to play among the bales of paper. The bales of paper were stacked so that there were tunnels through which we would crawl to reach forts or rooms within the stacks of paper bales where we played games.

On May 28, 1997, Danny Devenport, Ron Murray and I went to the business premises of Paper Recycling after school to play amongst the bales of paper. On that day, the three of us entered through an opening in the fence. There was no one around and we began to play among the bales of paper.

321

Ron Murray had brought a box of stick matches that day, and all three of us played with the matches among the bales of paper. After a time, we proceeded down one of the tunnels in the paper bales and spent some time in a fort or room among the bales. It was then that we noticed that there was a fire at the far end of the tunnel in the area where we had been previously playing.

¶ 54. These documents indicate that the primary purpose and nature of the boys' activity was climbing and playing among the paper bales. To be sure, the boys lit fires on Paper Recycling's premises. However, the evidence shows that they did so only as a temporary diversion before crawling into another "room" and continuing their primary activity.

¶ 55. I recognize that, as the majority notes, the boys' affidavits are subjective. And I agree with the majority that in general, although a property user's subjective intent is relevant, it is not controlling as to whether he or she is engaged in a recreational activity. However, in the present case, the boys' affidavits are the only relevant evidence before this court. Consequently, the court necessarily should have based its ruling on the evidence in the affidavits.

¶ 56. Nevertheless, the majority ignores the affidavits and concludes that "[t]he goal of the boys' activity was to light matches and start fires." Majority op. at ¶ 27. Not only is there no evidence in the record to support such a proposition, but the boys' affidavits directly contradict this conclusion.

¶ 57. The affidavits, the sole evidence on point, show that the boys' primary activity was climbing and playing among the paper bales. Thus, had the majority properly applied *Linville* to the evidence in the record and focused on the boys' primary activity—climbing

and playing among the bales of paper—rather than upon a single, temporary diversion during the activity, it would have determined that the boys were engaged in an "outdoor activity," substantially similar to "exploring caves" and "rock-climbing." Wis. Stat. § 895.52(1)(g) (listing "exploring caves" and "rock-climbing" as recreational activities). For this reason, § 895.52 should apply. *See* majority op. at ¶ 20 (explaining that § 895.52(2)(b) immunity applies to outdoor activities that are "substantially similar" to the recreational activities listed in § 895.52(1)(g)).

## B

¶ 58. The majority opinion also is problematic because it gives great weight to the nature of Paper Recycling's property. This ignores the plain text of § 895.52, legislative intent, and this court's precedent.

¶ 59. Section 895.52 does not premise liability on the nature of the property on which a person engages in a recreational activity. Section 895.52(2)(b) immunizes property owners against liability for injury or death caused by or to "a person engaging in a recreational activity on the owner's property." Section 895.52(1)(f) defines "property" in pertinent part as "real property and buildings, structures and improvements thereon, and the waters of the state." Both of these provisions are clear and unambiguous. *Verdoljak*, 200 Wis. 2d at 634. And neither of these provisions contains any limiting language regarding the "nature" of property to which the statute applies. Hence, the plain text of the statute indicates that immunity attaches to any "recre-

ational activity," regardless of the nature of the property on which the activity occurs.[4]

¶ 60. That § 895.52 is blind to the nature of an owner's property is further evidenced by the statute's legislative history.[5] Prior to May 1984 when § 895.52 became law, recreational immunity was governed by Wis. Stat. § 29.68 (1981–82).[6] The prefatory language to Ch. 89, Laws of 1963, the act that created § 29.68, explained the statute as "relating to the limitations on

---

[4] The majority seems to suggest that because § 895.52 does not specifically prohibit courts from considering the nature of property when determining whether the statute applies to a given case, this court may graft such a consideration onto the statutory test. However, as explained above, the legislature intended § 895.52 to be broadly construed. Further, the legislature wrote § 895.52 in broad terms and unequivocally defined the "property" to which the statute applies. In light of these facts, I do not find it reasonable to conclude based on an absence of language in § 895.52 to the contrary, that the legislature intended this court to introduce limitations to the statute, thus narrowing the scope and rewriting the definition of the statutory term "property."

[5] Although this court may not tap legislative history to show that a statute is ambiguous, we may use legislative history to support a conclusion that a statute is clear on its face. *Seider v. O'Connell*, 2000 WI 76, ¶¶ 51–52, 236 Wis. 2d 211, 612 N.W.2d 659.

[6] Section 29.68 of the Wisconsin Statutes (1981–82) provided in pertinent part:

> Liability of landowners. (1) Safe for entry; no warning. An owner, lessee or occupant of premises owes no duty to keep the premises safe for entry or use by others for hunting, fishing, trapping, camping, hiking, snowmobiling, berry picking, water sports, sight-seeing, cutting or removing wood, climbing of observation towers or recreational purposes, or to give warning of any unsafe condition or use of or structure or activity on the premises to persons entering for such purpose. . . .

liability of landowners who open private lands for recreational purposes." The legislature subsequently altered this language several times, thus redefining the intended scope of the statute: Ch. 190, Laws of 1965 applied to "a landowner who gives another permission to use his land for a recreational purpose"; § 1, Ch. 75, Laws of 1977 applied to "landowners who permit people to cut or remove wood from their land"; and Ch. 123, Laws of 1977 applied to "landowners who allow their land to be used for certain outdoor recreational activities." *Verdoljak*, 200 Wis. 2d at 633. But although the legislature altered this prefatory language, it consistently indicated that § 29.68 applied only to specific types of "opened" property.

¶ 61. In May 1984 the legislature repealed § 29.68 and enacted § 895.52. 1983 Wis. Act 418. In doing so, the legislature made clear that § 895.52 "is intended to overrule any previous Wisconsin Supreme Court decisions interpreting § 29.68 of the statutes if the decision is more restrictive than or inconsistent with the provisions of this act."[7] 1983 Wis. Act 418. As this court later observed:

---

[7] It appears that the legislature included this language in part to show its dissatisfaction with this court's decision in *LePoidevin v. Wilson*, which, while narrowing the scope of § 29.68, noted that "[t]he language of the statute leaves uncertain the types of lands, persons, and events intended to be included within its purview." 111 Wis. 2d 116, 128–29, 330 N.W.2d 555 (1983), *superceded by statute*, Wis. Stat. § 895.52. As an associate of a sponsor of 1983 Wis. Act 418 explained:

> [T]his bill is to do away with some of the great uncertainty of our present landowner liability law. This is particularly important because of the Supreme Court's 1983 decision in *LePoidevin v. Wilson*, 111 Wis. 2d 116.

> [T]he newly created statute [§ 895.52] is essentially a complete rewrite, containing none of the previous references to 'open[ing] land'. . . .
>
> The unambiguous language of the [new] recreational use statute sets the following precondition for immunity—that the injury be to or caused by "a person engaging in a recreational activity on the owner's property."

*Verdoljak*, 200 Wis. 2d at 633–34 (quoting § 895.52(2)(b)). Based on this observation and the language in § 895.52, we thus concluded that the legislature consciously decided to remove the nature of property from consideration when assessing statutory recreational immunity. *Id.* at 631, 633–34. Accordingly, to date, this court consistently has held that "the test to determine whether an activity is recreational focuses on the 'nature of the activity,' not the nature of the property." *Sievert v. American Family Mut. Ins. Co.*, 190 Wis. 2d 623, 632, 528 N.W.2d 413 (1995); *see also Verdoljak*, 200 Wis. 2d at 631.

¶ 62. Despite this overwhelming authority to the contrary, the majority asserts that the nature of property can be a "significant factor" to § 895.52 analysis. Majority op. at ¶ 24. To support this assertion, the majority cites a single line in *Linville*, 184 Wis. 2d at 717, where this court considered the fact that a person was "at a recreational facility which is open for public use, looking at potential fishing areas," in concluding that the person was engaged in a recreational activity. But had the majority examined this line in the context of the *Linville* opinion rather than citing it in an analytical vacuum, it would have recognized that *Linville*

---

Letter from John R. Zillmer to Jim S. Christenson, Bureau of Legal Services, Dept. of Natural Res. 2 (June 2, 1983).

does not lend any support to its "nature of the property" analysis.

¶ 63. As explained above, the evidence in *Linville* showed that several persons who allegedly were examining property in preparation to fish there the following day drowned while pushing a van out of mud. *Id.* at 712, 717. But because the persons drowned while dislodging the van and not while fishing, this court examined the nature of the property to determine whether it supported the allegations that the person intended to fish there the next day. *Id.* That is, this court examined the nature of the property only insofar as it evidenced the credibility of the witnesses' account of the events leading to the accident. We did not consider the nature of the property as defining the activity.

¶ 64. In the present case, the nature of Paper Recycling's premises supports the boys' accounts that they were climbing and playing prior to the fire. It is undisputed that the property contained large bales of paper. It further is undisputed that between these bales of paper, there were spaces in which the boys could climb and play. Thus, to the extent that *Linville* suggests that this court should consider the nature of Paper Recycling's premises, the nature of the property lends credence to the boys' descriptions of the events at issue.

¶ 65. Nevertheless, the majority looks beyond the nature of the property as evidence of the credibility of the boys' affidavits and considers the nature of the property as defining the boys' activity. The majority explains that the closed, industrial "nature of Paper Recycling's property is crucial to our examination of the nature of the boys' activity."[8] Majority op. at ¶ 25.

---

[8] The majority even goes so far as to suggest that the subjective intent of a landowner to open his or her property to

Hence, it reasons that the nature of Paper Recycling's property transmogrifies the boys' climbing and playing from a recreational activity into something else.

¶ 66. The majority's reasoning is counterintuitive for at least four reasons. First, the majority's reasoning contravenes the general canons of statutory construction. "It is a well-recognized rule of statutory construction that nontechnical words and phrases are to be construed according to their common and ordinary usage." *Ervin*, 159 Wis. 2d at 483–84 (citation omitted). Pursuant to this rule, the enumerated "recreational activities" in Wis. Stat. § 895.52 should be construed in light of their common and ordinary usage.

¶ 67. However, under the majority's "nature of the property" analysis, the enumerated activities in § 895.52 cannot be construed in light of their common meanings. For example, § 895.52 lists "bicycling"

recreational use should be a factor for courts to consider under § 895.52 analysis. Majority op. at ¶ 25. This proposition is without legal support.

In *Linville*, this court held that the subjective intent of the *property user* is relevant to whether a particular activity falls within the scope of § 895.52. *Linville v. City of Janesville*, 184 Wis. 2d 705, 716, 516 N.W.2d 427 (1994). *Linville* did not, however, mention the subjective intent of the property owner.

Indeed, in *Verdoljak v. Mosinee Paper Corp.*, 200 Wis. 2d 624, 628, 547 N.W.2d 602 (1996), this court specifically rejected the proposition that § 895.52 conditions immunity upon the property owner's subjective intent to open his or her land to recreational activity. As we explained: "[T]he concept of 'openness'. . .has never been and is not now. . .an 'element' of the statute that a landowner needs to satisfy in order to be afforded immunity." *Id.* at 634 n.6. "The focus is on the *activity* of the person who enters and uses the land, not upon any obligation on the part of the owner to affirmatively demonstrate that the land is open." *Id.* at 631.

among its enumerated recreational activities. The ordinary and common meaning of "bicycling" is "[t]o ride or travel on a bicycle." *The American Heritage Dictionary of the English Language* 183 (3d ed. 1992).[9] Thus, pursuant to the rule of statutory construction set forth above, a reasonable person reading § 895.52 would expect that the act of riding or traveling on a bicycle for purposes of exercise, relaxation, or pleasure always is a "recreational activity" to which the statute applies. But under the majority's "nature of the property" analysis, while § 895.52 may apply to riding or traveling on a bicycle for such purposes in a park, it may not apply to riding or traveling on a bicycle for the same purposes in an industrial lot. Under this reasoning, the statutory term "bicycling" does not necessarily mean "to ride or travel on a bicycle" for recreational purposes. Rather, the term means "to ride or travel on a bicycle" for recreational purposes *in areas where a court determines such an activity is appropriate.* Consequently, pursuant to the majority's reasoning, the definition of "bicycling," as used in § 895.52, is more limited in scope than the statute or the term's ordinary and common meaning would suggest.

¶ 68. Second, the majority's reasoning creates artificial distinctions between activities to which § 895.52 potentially may apply. Many modern sports and activities such as BMX bicycling, skateboarding, and in-line skating are best suited for an urban environment. And many of these sports and activities arguably are or are exceedingly similar to enumerated "recreational activities" such as "skating" or "bicy-

---

[9] "The ordinary and common meaning of a word may be established by definition of a recognized dictionary." *Ervin v. City of Kenosha*, 159 Wis. 2d 464, 483–84, 464 N.W.2d 654 (1991) (citation omitted).

cling." But pursuant to the majority's reasoning, while § 895.52 applies to "skating" on a pond in a public park (*i.e.*, a "recreational area"), for example, it may not apply to in-line skating in the parking lot of a commercial business.

¶ 69. Third, the majority's analysis could lead to absurd and unreasonable results. In accordance with the majority's analysis, if a person is injured in an area intended for recreating—such as a park—he or she may not pursue a claim for the injuries. On the other hand, if a person is injured during the same activity in an area where the activity is dangerous, prohibited, or even illegal—such as an industrial lot—he or she may sue the property owner. Thus, the majority's analysis affords greater rights to persons who engage in their activities in dangerous, "non-recreational" areas than it does to persons who exercise caution, discretion, and common sense. *Contra Verdoljak*, 200 Wis. 2d at 636 ("We reject the notion that the recreational use statute could confer greater protection to a trespasser than to one who was lawfully using the premises. . . .").

¶ 70. And fourth, the majority's analysis may suggest to property owners such as Paper Recycling to remove fences, barricades, and other protective devices in order to give their lands the appearance of a "recreational area." Owners who maintain such protections run the risk of owning what the majority may deem "non-recreational property" and, thus, being held liable for users' injuries. But if the owners give their properties—regardless of danger—the appearance of a "recreational area," they less likely will be subjected to lawsuits. *Cf. Ervin*, 159 Wis. 2d at 477 ("If liability were imposed on landowners for negligence in failing to provide adequate safety measures, it would encourage landowners to provide no safety measures.").

¶ 71. I cannot believe that the legislature intended § 895.52 to promote any of these policies or lead to such absurd results. Accordingly, I cannot join the majority in abandoning *Linville, Sievert, Verdoljak*, and our other precedent on point, and adopting this unworkable reasoning.

## II

¶ 72. I recognize that proper application of § 895.52 may lead to harsh results, and I agree with Justice Bradley's observation that the legislature should consider revisiting this statute. But I further recognize that while there may be reason to dislike § 895.52, there are limits to courts' authority: "[W]hen a legislative mandate is 'clearly expressed and there is no warrant for alternative construction, a court may not impose its view of what the law should be.' " *Ervin*, 159 Wis. 2d at 478 (citation omitted). Policy considerations weighing in favor of creating exceptions to statutory mandates are best left to the established province of the legislature. *Seider v. O'Connell*, 2000 WI 76, ¶ 40, 236 Wis. 2d 211, 612 N.W.2d 659.

¶ 73. In sum, I believe that had the majority properly applied § 895.52 in light of the legislative intent and plain text of the statute and in accord with this court's precedent, it would have concluded that the statute applies in this case. Accordingly, the court should have concluded that summary judgment in favor of Paper Recycling is appropriate.

¶ 74. In refusing to grant summary judgment for Paper Recycling, the majority has contravened the purpose and text of § 895.52, and has ignored our precedent on point. Unlike the majority, I believe that if § 895.52 is to be limited or amended, the legisla-

ture—not this court—is the proper body to make the changes. For this reason, I dissent.

¶ 75. I am authorized to state that Justice DAVID T. PROSSER joins this dissent.